**ST. LUKE'S EPISCOPAL HOSPITAL,**
Plaintiff,

v.

**GREAT WEST LIFE & ANNUITY
INSURANCE COMPANY,**
Defendant.

**No. CIV.A. H–98–0106.**

United States District Court,
S.D. Texas,
Houston Division.

Jan. 21, 1999.

Michael H. Johnston, Sullins, Johnston, Houston, TX, for plaintiff.

John Philip, Griffis, Hays, McConn, Rice & Pickering, Houston, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

LAKE, District Judge.

Pending before the court are Plaintiffs' [sic] Motion for Summary Judgment (Docket Entry No. 9) and Defendant's Motion for Summary Judgment (Docket Entry No. 10).

## I. BACKGROUND

On July 1, 1996, John W. Painter & Assoc. Inc. ("Painter") established a health benefits plan for its employees. The plan was self-funded. Painter contracted with defendant, Great West Life & Annuity Insurance Company ("Great West"), to process and pay claims according to the terms of the plan. Under the contract Painter agreed to reimburse Great West for claim payments that Great West paid on behalf of the plan.

On August 28, 1996, plaintiff, St. Luke's Episcopal Hospital ("St.Luke's"), admitted a Painter employee named Dale Lauver ("Lauver"). St. Luke's alleges that it contacted Great West and received assurances that Lauver had health insurance coverage. St. Luke's treated Lauver and discharged him on August 31, 1996. On September 17 or 18, 1996, St. Luke's readmitted Lauver. The hospital allegedly called Great West again and confirmed coverage. St. Luke's treated Lauver again and discharged him on or about September 25, 1996.

St. Luke's subsequently submitted claims to Great West for the treatment it provided Lauver. While Great West agrees that Lauver is a participant of the plan and is eligible for benefits,[1] it denied St. Luke's claims. Great West contends that because Painter failed to make its scheduled premium payments, Great West terminated its services contract with Painter, effective September 1, 1996. Great West stopped processing and paying claims on that date regardless of when the benefit claims arose.[2]

On November 25, 1997, St. Luke's filed suit against Great West[3] in the 190th District Court of Harris County, alleging:

(1) deceptive and unfair trade practices in violation of Tex. Ins.Code Ann. arts. 17.41, 21.21, 21.21–2 (Vernon Supp.1998); Tex. Bus. & Com.Code Ann. §§ 17.46(a), 17.50(a) (Vernon 1987); and 28 Tex. Admin. Code §§ 21.1–21.2011 (1998) (Tex. Dep't of Ins.); and

(2) negligence and negligent misrepresentation under Texas common law.

Great West removed the action on January 14, 1998, alleging diversity jurisdiction and that ERISA completely preempts St. Luke's claims.

---

1. Affidavit of Patricia Fry (Great West's Assistant Vice–President, Benefit Payments) ¶6, Defendant's Motion for Summary Judgment [Docket Entry No. 10], Exhibit 4.

2. Fry Affidavit ¶7, Defendant's Motion for Summary Judgment [Docket Entry No. 10], Exhibit 4.

3. St. Luke's did not name the health plan or Painter as defendants, nor has St. Luke's joined them since.

On August 27, 1998, St. Luke's filed a motion for summary judgment on its negligence and negligent misrepresentation claims. The next day Great West filed its own motion for summary judgment claiming that all of St. Luke's claims are preempted by ERISA and that, should St. Luke's amend its complaint to allege a claim for benefits under ERISA, Great West is not the proper party for such claims. St. Luke's amended its complaint on December 1, 1998, alleging the following causes of action:

(1) denial of benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (1994);

(2) breach of contract;

(3) breach of fiduciary duty and breach of the duty of good faith and fair dealing;

(4) deceptive and unfair trade practices in violation of Tex. Ins.Code Ann. arts. 21.21 & 21.21–2 (Vernon Supp.1998); Tex. Bus. & Com.Code Ann. §§ 17.46, 17.50(a) (Vernon 1987); and 28 Tex. Admin.Code §§ 21.1–21.2011 (1998) (Tex. Dep't of Ins.); and

(5) negligence and negligent misrepresentation.

## II. EVIDENTIARY ISSUES

In response to St. Luke's motion for summary judgment Great West objects to certain evidence and asks the court to strike it. St. Luke's did not reply to Great West's objections. First, Great West objects to the admission of medical records attached to the affidavits of Drs. Donald Trillos and Surendra Jain, the physicians who treated Lauver. Great West contends that the medical records are inadmissible for lack of authentication and because they are hearsay. The court is not persuaded by these objections and will consider the medical records.

Second, Great West objects to several statements in the affidavit of Wayland Madden, Accounts Services Supervisor for St. Luke's, that St. Luke's submitted in support of its motion for summary judgment. In this affidavit Madden attempts to explain the general procedures St. Luke's employs in verifying patient insurance coverage, testifies as to specific events related to Lauver's admission, and speculates as to the views and understandings of insurance providers and third-party administrators. Great West argues that Madden has not testified that he had personal knowledge of the specific facts stated in his affidavit or how he gained such personal knowledge. Great West also argues that Madden's statements as to what insurance companies and third-party administrators know are speculative, conclusory, and not based on personal knowledge.

■■■ When affidavits are used to support or oppose a motion for summary judgment they "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *Beijing Metals & Minerals Import/Export Corp. v. American Bus. Ctr., Inc.*, 993 F.2d 1178, 1182 (5th Cir.1993). Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment. *See Richardson v. Oldham*, 12 F.3d 1373, 1378–79 (5th Cir.1994). Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as modified*, 70 F.3d 26 (5th Cir.1995); *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992).

■■■ The court concludes that Madden's affidavit fails these requirements with regard to the following statements:

(1) "The insurance companies or their third party administrators know why the hospital is calling for benefits and coverage;"[4]

(2) "Further, the insurance carriers are well aware of why the information is required by the hospital;"[5]

(3) "The insurance companies and the third party administrators have the hospital at a disadvantage;"[6]

(4) "The insurance carriers or their third party administrators provide the information regarding benefits and coverage, knowing that the hospital will rely on this information with regard to anticipated payment for services that are to be provided to patients;"[7]

(5) "In connection with Dale Lauver's admission of August 28, 1996, Defendant represented he was covered and provided benefits payable at 90% of room, board, and miscellaneous expenses. In addition, Defendant precertified and authorized the admission of Dale Lauver;"[8] and

(6) "In connection with Dale Lauver's admission of September 18, 1996, Defendant represented he was covered and provided benefits payable at 90% of room, board, and miscellaneous expenses. Further, Defendant did not disclose that Dale Lauver's insurance coverage had been terminated on September 1, 1996 based upon the alleged failure of the employer to pay for the premium."[9]

Because Madden's affidavit does not explain whether Madden had personal knowledge of any of these facts, these statements are not competent summary judgment evidence, and the court will not consider them. *See Lee v. National Life Assurance Co. of Canada,* 632 F.2d 524, 529 (5th Cir.1980). The court is not persuaded by Great West's other objections.

4. Madden Affidavit ¶ 4.

5. Madden Affidavit ¶ 4.

6. Madden Affidavit ¶ 4.

7. Madden Affidavit ¶ 4.

## III. *STANDARD OF REVIEW*

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996); *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996). The Supreme Court has interpreted the plain language of Rule 56(c) as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (quoting *Celotex,* 106 S.Ct. at 2553, 106 S.Ct. 2548). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 762 (5th Cir.1996) (citing *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992)). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little,* 37 F.3d at 1075.

8. Madden Affidavit ¶ 6.

9. Madden Affidavit ¶ 7.

If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1180 (5th Cir.1996); *Wallace v.. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1047; *accord, S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as modified*, 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v.. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Texas Instruments Inc.*, 100 F.3d at 1179.

## IV. *ERISA PREEMPTION*

Great West argues that all of St. Luke's state-law claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1994). When a defendant asserts preemption, it must overcome a presumption against preemption. *See California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997). ERISA § 514(a) provides:

> Except as provided in subsection (b)[10] of this section, the provisions of this subchapter [ERISA subch. I, §§ 2–515, 29 U.S.C. §§ 1001–1145] and subchapter III [ERISA §§ 4001–4402, 29 U.S.C. §§ 1301–1461] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). In order to prevail on the issue of ERISA preemption, a defendant must establish that the plan at issue is an employee welfare benefit plan covered by ERISA and that the state-law claims involved in the suit "relate to" that plan. *See Vega v. National Life Ins. Servs., Inc.*, 145 F.3d 673, 675–76 (5th Cir. 1998) (explaining that ERISA would not preempt unless "there exist[ed] a valid ERISA plan"); *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 175–76 (5th Cir.1994) (explaining that even if ERISA covered the plan at issue, ERISA does not preempt state-law claims unless they relate to the ERISA plan).

St. Luke's does not contest that the plan at issue here is an ERISA plan. Instead, the parties disagree as to whether St. Luke's common-law and statutory negligence and negligent misrepresentation claims[11] relate to the plan.[12] This issue

---

**10.** Subsection (b) lists a variety of exceptions to preemption, none of which apply here.

**11.** Both Texas common-law and the Texas Insurance Code provide causes of action for negligent misrepresentation. *See Hermann Hosp. Sys. v. MEBA Med. & Benefits Plan (Hermann II )*, 959 F.2d 569, 577 (5th Cir. 1992) (explaining that Tex. Ins.Code Ann. art. 21.21 (Vernon Supp.1998) is in part a codified version of negligent misrepresentation); *Richter, S.A. v. Bank of America Nat'l Trust &*

*Sav. Ass'n*, 939 F.2d 1176, 1185 (5th Cir. 1991) (explaining the elements of negligent misrepresentation under Texas common-law). The court construes St. Luke's cause of action under the Deceptive and Unfair Trade Practices Act, the Texas Insurance Code, and the Texas Administrative Code as alleging statutory negligent misrepresentation.

**12.** In response to Great West's preemption argument St. Luke's focuses on its negligent

frequently appears on this court's docket. Typically, plaintiff hospitals rely on one line of Fifth Circuit cases holding that negligent misrepresentation claims brought directly by a hospital against a plan administrator do not relate to an ERISA plan, while defendants rely on another line of Fifth Circuit cases holding that such claims do relate to an ERISA plan. To resolve this dispute the court must examine and attempt to reconcile these two lines of authority.

## A. Fifth Circuit Precedent

1. *Hermann I* and *Hermann II:* Negligent misrepresentation claims are preempted.

In *Hermann Hospital v. MEBA Medical & Benefits Plan (Hermann I)*, 845 F.2d 1286, 1290–91 (5th Cir.1988) (Jones, J.), the Fifth Circuit held that a negligent misrepresentation claim brought by a hospital against an ERISA plan was preempted by ERISA. In *Hermann I* the hospital had contacted the plan to determine whether a patient was covered by the plan, and the plan said she was covered. The patient and her husband[13] had assigned their benefit rights to the hospital. When the hospital filed benefit claims the plan failed to pay. The plan did not deny coverage, but simply put off payment because it was still investigating the claims. *See id.* at 1287. After two years of delay, the hospital sued, raising a claim under ERISA § 502(a) for plan benefits, as well as several state-law causes of action, including negligent misrepresentation. *See id.* at 1286–87.

The Fifth Circuit concluded that because ERISA § 502(a), 29 U.S.C. § 1132(a), does not list third-party health care providers as entities entitled to bring an enforcement action, such "non-enumerated" parties do not have direct standing to pursue relief under ERISA. *See id.* at 1289. The court concluded, however, that when plan participants or beneficiaries validly assign their rights to benefits to non-enumerated parties, such parties have "derivative" standing to sue under ERISA § 502(a). *See id.* at 1289–90. The Fifth Circuit then held that ERISA preempted all of the hospital's state-law causes of action, including its claim for negligent misrepresentation. *See id.* at 1290–91. Because the district court had not examined the validity of the patient and her husband's assignments, the court remanded that issue to the district court. *See id.* at 1290 n. 15.

In *Hermann Hospital v. MEBA Medical & Benefits Plan (Hermann II)*, 959 F.2d 569, 572 (5th Cir.1992) (Weiner, J.), a different Fifth Circuit panel reversed the district court's subsequent decision on remand that the patient had not made a valid assignment. After holding that the assignment was valid,[14] that an anti-assignment provision in the governing plan did not apply,[15] and that the hospital did not have standing as an ERISA beneficiary,[16]

---

misrepresentation claims; the hospital does not explain why ERISA should not preempt its breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duty claims. In light of St. Luke's acquiescence on these three claims and the fact that they relate to the plan at issue, the court concludes that these claims are preempted by ERISA, and the court will grant Great West's motion for summary judgment on these three claims.

13. The husband was the actual plan participant. His wife was eligible for benefits as his beneficiary. *See Hermann I*, 845 F.2d at 1287.

14. *See Hermann II*, 959 F.2d at 573.

15. The court held that because the plan failed to assert the anti-assignment clause until more than three years after the hospital first requested payment, the plan was estopped from raising the clause. *See id.* at 574. Alternatively, the court held that estoppel aside, the anti-assignment clause would not have applied to assignments of benefits to third-party health care providers. *See id.* at 575.

16. Given the *Hermann I* court's holding that the hospital had derivative standing under ERISA, it is unclear why the hospital sought a ruling that it had standing under ERISA as a beneficiary. Nonetheless, the *Hermann II* court first held that the hospital had waived any argument that it had standing as a benefi-

the court reviewed the hospital's arguments that, in spite of the *Hermann I* court's contrary holding, its state-law claims were not preempted.

The *Hermann II* court declined to disturb the *Hermann I* holding under the law of the case doctrine. *See id.* at 578. The court explained that

> [t]he law of the case doctrine requires that decisions of law made on a former appeal must be followed in all subsequent proceedings in the same case unless:
>
> > (i) a subsequent trial produces substantially different evidence; (ii) the prior decision was clearly erroneous and would work manifest injustice; or (iii) controlling authority has since made a contrary decision of law applicable to the issue.

*Id.* (quoting *Falcon v. General Tel. Co.,* 815 F.2d 317, 320 (5th Cir.1987)). The court focused on the third exception and held that two subsequent binding decisions[17] that appeared to contradict *Hermann I* did not affect the *Hermann I* court's conclusion on preemption. *See id.* at 579. The *Hermann II* court concluded that the language cited by the hospital from these decisions was dicta and that

another Fifth Circuit decision, decided after *Mackey* and *Memorial,* demonstrated the continued viability of *Hermann I. See id.* at 578–79 (discussing *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209 (5th Cir. 1992)). Because no exception to the law of the case doctrine applied, the *Hermann II* court refused to disturb *Hermann I* and held that the hospital's negligent misrepresentation claims were preempted whether the claims were asserted as a derivative beneficiary based on the assignment of a plan member or beneficiary, or asserted directly. *See id.* at 579.

2. *Memorial:* Negligent misrepresentation claims are not preempted.

In *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236, 250 (5th Cir.1990) (King, J.), the Fifth Circuit held that ERISA did not preempt a statutory negligent misrepresentation claim brought by a hospital against an employer and its health insurance provider. The patient's husband had gone to work for the employer in September of 1986. Under the employer's ERISA plan, the husband and his beneficiaries had to wait thirty days before the plan would cover them. The employee's wife sought

---

ciary because it did not raise the issue until after the first trial, when it brought the issue up in two *supplemental* briefs in the first appeal. *See id.* at 575. Moreover, after the *Hermann I* court remanded, the hospital did not raise the issue in the district court until after the trial on the merits. *See id.*

Alternatively, on the merits of the argument, the *Hermann II* court held that "[n]either Mr. Nicholas' [the actual plan participant] act of authorizing the Plan to make payments directly to Hermann, nor Mrs. Nicholas' [the patient-beneficiary] assignment of the right to recover payments for benefits provided, elevated Hermann to the status of beneficiary under the Plan." *Id.* at 576.

**17.** Specifically, the hospital in *Hermann II* argued that the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), and the Fifth Circuit's decision in *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236 (5th Cir.1990), justified applying the third ex-

ception to the rule of the case doctrine. *See Hermann II,* 959 F.2d at 578.

The *Hermann II* court characterized as dicta the *Mackey* Court's pronouncement that ERISA does not preempt "run-of-the-mill" state tort claims against ERISA plans. *See id.* at 579. This statement was dicta because the Court was not actually considering a tort action in *Mackey,* but rather a general garnishment statute. *See id.* Moreover, the *Hermann II* court noted that the *Mackey* Court never actually concluded that "run-of-the-mill" state court actions might escape preemption. The parties in *Mackey* had conceded this point; thus, the Court never actually decided it. *See id.; see also infra* section II(A)(3).

Similarly, after briefly reviewing language in the *Memorial* court's decision examining the continued viability of *Hermann I* in light of *Mackey,* the *Hermann II* court concluded that *Memorial*'s comments on the matter also were dicta. *See Hermann II,* 959 F.2d at 579.

treatment at the hospital sixteen days after her husband started work. The hospital contacted the employer, which verified that the wife was covered by the plan. The wife assigned her right to benefits to the hospital. The insurance provider refused to pay the hospital because the wife was not eligible for benefits at the time of her admittance to the hospital. The hospital sued both the employer [18] and the insurance provider on various state-law grounds, including negligent misrepresentation. *See id.* at 238.

After first deciding that ERISA governed the plan,[19] the Fifth Circuit considered whether ERISA preempted the hospital's negligent misrepresentation claim. The court noted that the hospital did not rely on or even refer to its assigned right to the patient's benefits in this claim,[20] that the hospital did not assert any right to plan benefits or allege bad faith in claim processing, and that the hospital sought damages for services rendered, not benefits denied, as well as a statutory penalty. Based on these factors, the court held that the hospital had not alleged a derivative claim for ERISA benefits. *See id.* at 244.

The court then proceeded to examine briefly several ERISA preemption cases, including *Hermann I,*[21] and synthesized its often repeated [22] two-factor test for preemption:

> Although finer discernments might be made, these and similar cases binding in this circuit, which have found preemption of a plaintiff's state law causes of action, have at least two unifying characteristics: (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Id.* at 245 (footnotes omitted). The first factor led the court to explore Congress's intent. "Congress enacted ERISA 'to promote the interests of employees and their beneficiaries in employee benefit plans,'" ... and "to protect contractually defined benefits." *Id.* at 246 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985))). The court concluded that, given the commercial realities surrounding the provision of health care,[23] allowing hospitals to recover

**18.** The hospital argued that the employer acted as the insurance provider's agent. *See Memorial,* 904 F.2d at 238.

**19.** *See id.* at 243.

**20.** Conversely, the hospital did rely in part on the assignment in alleging its claim for breach of contract. *See id.*

**21.** *See id.* at 245 n. 12 (describing *Hermann I* as a "derivative action brought by [an] assignee who stood in [the] shoes of [a] plan beneficiary to recover benefits owed under an ERISA plan"); *id.* at 250.

**22.** *See, e.g., Boggs v. Boggs,* 82 F.3d 90, 95–96 (5th Cir.1996); *Hubbard v. Blue Cross & Blue Shield Ass'n,* 42 F.3d 942, 945 (5th Cir.1995); *Weaver v. Employers Underwriters, Inc.,* 13 F.3d 172, 176 (5th Cir.1994).

**23.** The court described these commercial realities as follows:

> The scenario depicted in Memorial's appeal is one that is reenacted each day across the country. A patient in need of medical care requests admission to a hospital (or seeks treatment from a doctor). The costs of medical care are high and many providers have only limited budget allocations for indigent care and for losses from patient nonpayment. Naturally, the provider wants to know if payment reasonably can be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided.
>
> If a provider believes that a patient may be covered under a health care plan, it is a customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the

the costs of services provided to an ineligible plan participant or beneficiary from an insurer that incorrectly verified plan coverage does not expand the *patient*'s right to plan benefits. *See id.* The ultimate issue is whether the hospital or the insurer should bear the risk of nonpayment by the patient for the services rendered. Because Congress's intent focused on the *patient*'s rights, the court concluded that Congress did not intend to regulate the commercial dealings between ERISA plans and third-party health care providers. *See id.* at 247.

The court dismissed as a "coincidence" the defendants' argument that because damages would be measured by the benefits allegedly due under the plan, the hospital's claim related to an ERISA plan. The court reasoned that the potential benefits merely set a benchmark and removed much speculation from the damage calculation. The court also concluded that the *quantum* of damages was unrelated to the *right* to benefits under the plan, and that a one-time recovery against the plan would have little effect on the continuing administration of the plan. *See id.*

The *Memorial* court concluded that preemption of the hospital's negligent misrepresentation claim would not further Congress's goal of protecting the interests of participants and beneficiaries. *See id.* ERISA itself does not provide a remedy to third-party providers for misrepresentation. *See id.* at 248. *But see Hermann I,* 845 F.2d at 1290 (holding that third-party care providers have derivative standing as assignees to force payment of benefits from a plan). While the court acknowledged three previous Fifth Circuit decisions that had held that ERISA preempted state-law claims even though the statute offered no remedy for the alleged wrong,[24] it held that when preemption would de-

prive *third-party health care providers* of a remedy, ERISA should not preempt, since preemption would conflict with Congressional intent. *See Memorial,* 904 F.2d at 248.

Having concluded that the hospital's negligent misrepresentation claim did not address an area of exclusive federal concern, the *Memorial* court then addressed the effect of the claim on the relationship among the traditional ERISA entities. The court first noted that in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 2187 & n. 8, 100 L.Ed.2d 836 (1988), the Supreme Court declared that certain run-of-the-mill cases brought by non-ERISA entities are not preempted even though they might affect or involve ERISA plans. *See Memorial,* 904 F.2d at 248. *But see Hermann II,* 959 F.2d at 579 (declaring that this discussion in *Mackey* is dicta).

The *Memorial* court then examined a South Carolina Supreme Court decision cited by the *Mackey* Court in which a doctor sued a health plan for libel for telling plan participants not to seek treatment from him because his services did not fall "within the usual and customary realm of treatment and charges." *Memorial,* 904 F.2d at 248 (quoting *Abofreka v. Alston Tobacco Co.,* 288 S.C. 122, 341 S.E.2d 622 (1986)). The *Abofreka* court did not address whether ERISA preempted the libel claim. *See id.* at 248 n. 17. Nonetheless, the *Mackey* Court used it as an example of a remote, tenuous claim not preempted by ERISA. *See Mackey,* 108 S.Ct. at 2187 n. 8. The *Memorial* court also noted that the Fifth Circuit had recently held that "a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage,

---

health care, it will normally agree to admit the patient without further ado.
*Memorial,* 904 F.2d at 246.

**24.** *See Memorial,* 904 F.2d at 248 n. 16 (citing *Lee v. E.I. DuPont de Nemours & Co.,* 894

F.2d 755, 757 (5th Cir.1990) (citing *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1292–97 (5th Cir.1989), and *Degan v. Ford Motor Co.,* 869 F.2d 889, 893–95 (5th Cir.1989))).

'relates to' that plan only indirectly." *Memorial*, at 249 (quoting *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990)).

The court then explained the "bargain" represented by ERISA. In enacting ERISA § 502(a), Congress had carefully balanced the desire for prompt, fair settlement of claims against the public interest in the establishment and continuation of employee benefit plans. *See id.* (explaining the Supreme Court's description of the various interests in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987)). Similarly, other courts had opined that in ERISA, participants and beneficiaries agreed to limitations on their rights to sue in exchange for heightened statutory protection and regulation of their benefit plans. *See id.* (quoting *Williams v. Caterpillar, Inc.*, 720 F.Supp. 148, 152 (N.D.Cal.1989), *aff'd*, 944 F.2d 658 (9th Cir.1991)). Neither the hospital in *Memorial* nor "the countless other health care providers in this country" were parties to this "bargain." *Id.* Thus, while the court affirmed that ERISA preempted the hospital's derivative state-law claims as an assignee of the patient's benefits under the plan, it concluded that ERISA did not preempt the hospital's negligent misrepresentation claim:

> [Memorial] has brought this state law action in its independent status as a hospital, and Echols' [the patient-beneficiary] assignment of benefits is irrelevant to Memorial's right to recover. It is undisputed that Noffs' [the employer] plan did not cover Echols for Memorial's services, and Memorial neither seeks benefits from the plan nor claims that the plan acted improperly in processing and denying Memorial's claim. The claim is thus independent of the plan's

actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations.... Rather, Memorial seeks damages from an insurance company and its alleged agent, claiming that, had it not been for negligent misrepresentations of coverage, Memorial would not have accepted the financial risk of providing medical treatment to Echols. We do not think that Congress intended ERISA to regulate the commercial interactions of such entities in such situations.

*Id.* (citations omitted).

3. *Memorial*'s explanation of *Hermann I*

The *Memorial* court did not ignore *Hermann I;* the court used a lengthy footnote to attempt[25] to distinguish *Hermann I. See Memorial*, 904 F.2d at 249 n. 20. First, while the hospitals in both *Memorial* and *Hermann I* were assignees, the *Hermann I* hospital was complaining of a delay in payment, not a denial, and sought recovery of benefits owed to the hospital's assignor. *See id.* at 249 n. 20. Second, standing was the primary focus of the court in *Hermann I*, not preemption. Third, the *Memorial* court found it "clear from the [*Hermann I* ] court's analysis that it considered [the hospital's negligent misrepresentation claims] to be dependent on, and derived from, the rights of the plan beneficiaries to recover benefits under the terms of the plan." *Id.* at 249 n. 20. Finally, since the Supreme Court issued its decision in *Mackey* after *Hermann I*, the *Memorial* court felt that *Mackey* "place[d] a different light on state law actions brought by non-ERISA entities against an ERISA plan or fiduciary." *Id.* at 249–50 n. 20.[26]

---

**25.** *See Hermann II,* 959 F.2d at 579 (describing as dicta the *Memorial* court's discussion in footnote 20 of *Hermann I* and holding that *Memorial* does not constitute a binding decision contrary to the preemption holding in *Hermann I* ).

**26.** *But see Hermann II,* 959 F.2d at 579 (noting that *Mackey* made no relevant holding on the issue and that the parties in *Mackey* had simply conceded that many run-of-the-mill torts against ERISA plans were not preempted, and concluding that the *Memorial* court's discussion of the viability of *Hermann I* was at best dicta).

## B. Reconciling *Hermann I* and *Memorial*

Many courts attempted to reconcile *Hermann I* and *Memorial*. *See, e.g., Hermann Hosp. v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 962 F.Supp. 993, 996–97 (S.D.Tex. 1997). Typically, these courts concluded that when the alleged misrepresentation concerned the *existence* of a patient's coverage, *Memorial* should control, and ERISA does not preempt the claim. Conversely, when the alleged misrepresentation concerned the *extent* of a patient's coverage, *Hermann I* should control, and ERISA does preempt a state-law cause of action for negligent misrepresentation. *See, e.g., id.* at 997.

The Fifth Circuit apparently approved this rationalization in *Cypress Fairbanks Medical Center, Inc. v. Pan–American Life Insurance Co.*, 110 F.3d 280, 284 (5th Cir.) (Stewart, J.), *cert. denied,* —— U.S. ——, 118 S.Ct. 167, 139 L.Ed.2d 110 (1997). In *Cypress Fairbanks* a hospital provided health care services to a patient after it had received assurances from the patient's insurer that he was covered under an ERISA plan. When the hospital submitted a bill for its services to the insurer it denied the claims because the patient was not covered by the plan.[27] The hospital sued the insurer for statutory negligent misrepresentation, and the district court concluded that ERISA preempted the claim.

The Fifth Circuit declared the primary issue was the scope of *Memorial*. *See id.* at 281, 282. The hospital argued that *Memorial* controlled and that ERISA therefore did not preempt. The insurance company sought to invoke the existence-extent rule promoted by *Central States* and other district court decisions to distinguish *Memorial*. After summarizing the holding

and underlying rationale of *Memorial*, the *Cypress Fairbanks* court noted that the hospital in *Hermann I*, unlike the hospital in *Memorial*, did not allege a statutory negligent misrepresentation claim; instead, the *Hermann I* hospital brought a common-law negligent misrepresentation claim. *See Cypress Fairbanks*, 110 F.3d at 284; *Hermann II*, 959 F.2d at 572; *Hermann I*, 845 F.2d at 1290. Next, the *Cypress Fairbanks* court noted that the holding in *Hermann I* relied significantly on that court's reading of the Supreme Court's decisions in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). "These cases ... stood for the proposition that where a claim relates to an employee benefit plan governed by ERISA and are 'based upon state law of general application *and not a law regulating insurance,*' that state-law cause of action is preempted by ERISA." *Cypress Fairbanks*, 110 F.3d at 284 (quoting *Hermann I*, 845 F.2d at 1290) (emphasis added).

The court then briefly reviewed *Hermann II*. Despite the *Hermann II* court's explicit holding that *Memorial*'s discussion of *Hermann I* did not constitute a contrary decision, the *Cypress Fairbanks* court declared that the *Hermann II* court "did nothing more than hold that our preemption determination in *Hermann I* was the law of the case." *Id.* at 284. According to the *Cypress Fairbanks* court, "*Hermann II* adds nothing to our understanding of ERISA preemption." *Id.*

Having found *Hermann II* irrelevant to the debate, the *Cypress Fairbanks* court focused on *Memorial* and *Hermann I*. The court focused on footnote 20 in *Memorial* and concluded that *Memorial* actually clar-

---

27. More precisely, the insurer refused to pay because "coverage [was] rescinded as of [the] effective date." *See Cypress Fairbanks*, 110 F.3d at 281 (quoting the reason communicated by the insurer to the hospital). The court was understandably puzzled by the meaning of this phrase. However, given the posture of the parties at trial and on appeal and their apparent agreement on the reasons for the denial, the court proceeded on the assumption that the insurer denied coverage on the ground that the patient was not covered at all.

ified *Hermann I*. The *Cypress Fairbanks* court read this footnote as articulating two distinctions between the competing precedents:

(1) the underlying problem in *Hermann I* was the insurer's delay in processing claims allegedly owed to the hospital as an assignor, and

(2) the hospital's claims in *Hermann I* derived from the rights of the plan beneficiary to recover under the plan.

According to the *Cypress Fairbanks* court, this latter distinction meant that the hospital "was not an independent, third-party provider of medical services, but rather more akin to a first-party beneficiary whose causes of action are normally preempted by ERISA." *Id.* at 284. *But see Hermann II*, 959 F.2d at 576 (holding that a hospital could not be an ERISA beneficiary).

The *Cypress Fairbanks* court held that *Memorial* controlled. It is the explanation of *Hermann I* "as expressed in *Memorial*" that is the law of the circuit. According to the *Cypress Fairbanks* court, *Hermann II* never discussed ERISA preemption. *See id.* at 284. *But see Hermann II*, 959 F.2d at 576–79. Moreover, the Fifth Circuit "ha[s] never questioned the holding or analytical underpinnings of *Memorial*." *Cypress Fairbanks*, 110 F.3d at 284. Thus, the proper inquiry regarding preemption of a health care provider's negligent misrepresentation claim is "whether the beneficiary under the ERISA plan was covered at all by the terms of the health care policy." *Id.* If the patient-beneficiary is not covered, then the health care provider acts independently as a third party, and *Memorial* governs. *See id.* Because the patient in *Cypress Fairbanks* was not covered by the plan, the court held that ERISA did not preempt the hospital's negligent misrepresentation claim. *See id.* at 285.

This court's difficulty is in deciding how to apply what appear to be competing Fifth Circuit precedents. *Cypress Fairbanks* does not sufficiently guide the pres-

ent case both because the court cannot square it with *Hermann I, Hermann II,* and *Memorial,* and because it only articulates the course of action courts should take when the patient in fact is not covered by the plan. In the instant case Great West does not dispute that the patient is covered by Painter's ERISA plan. Instead, Great West refuses to pay because its obligation to pay claims on behalf of Painter allegedly ended when Painter failed to meet premium payments. In effect, Great West contends that it did not deny claims or maintain that Lauver was not covered by the plan when treated; Great West argues that it simply is the wrong entity from which to seek payment.

This case is factually similar to *Hermann I* because the defendant is not denying that the patient was covered by the ERISA plan. Therefore, the rule announced in *Cypress Fairbanks* does not directly apply. (*Cypress Fairbanks* did not state a corollary rule applying *Hermann I* if the beneficiary in fact is covered by an ERISA plan.) On the other hand, Great West argues that it is the wrong defendant for St. Luke's ERISA claims because the plan is self-funded by Painter. In other words, Great West contends that it is not even an ERISA entity. That fact strongly implicates the rationale of *Memorial.*

The court will follow the rule and example set out in *Memorial.* Of the four Fifth Circuit cases analyzed above, *Memorial* devotes the most analysis towards the issue of preemption of negligent misrepresentation claims. *Cypress Fairbanks* strongly implies that to the extent *Memorial* and *Hermann I* conflict, *Memorial* should control, despite the fact that the Fifth Circuit decided *Hermann I* first and no *en banc* decision has overruled it. Moreover, the reasoning of *Memorial* makes sense when applied to the unusual facts of this case. St. Luke's is not pressing a derivative claim for benefits; it does not premise its negligent misrepresentation claim on the assignment of benefits.

Given Great West's argument that it is not the proper party for St. Luke's ERISA claims, this cannot be a claim for benefits because, according to Great West, it owes no benefits to Lauver or St. Luke's even though Lauver is covered by the plan. The *Memorial* court's discussion of the commercial realities facing hospitals, particularly the court's expressed fear that preemption would hinder the purpose of ERISA by motivating hospitals to require payment up front from patients, also applies here. And lastly, the Fifth Circuit's decision in *Memorial* reversed the contrary conclusion of the undersigned judge that ERISA preempted a hospital's statutory negligent misrepresentation claim. *See Memorial,* 904 F.2d at 239, 250. Under the rule of "once bitten, twice shy," [28] the court will construe the scope of ERISA narrowly under the example of *Memorial.* The court concludes that ERISA does not preempt St. Luke's common-law negligence and statutory and common-law negligent misrepresentation claims.

## V. LIABILITY FOR NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

■ St. Luke's seeks summary judgment on the issue of Great West's liability for common-law negligence and negligent misrepresentation. Great West argues that, given its objections to St. Luke's summary judgment evidence, St. Luke's has failed to submit evidence to support either claim.[29] Specifically, Great West contends that St. Luke's has offered no evidence that Great West gave false information, did not exercise reasonable care in providing such information, or that it made a false communication. The court agrees.

In order to prevail on its negligent misrepresentation claim St. Luke's must establish that

(1) Great West supplied false information;

(2) Great West supplied the information to guide St. Luke's in a business transaction;

(3) Great West failed to exercise reasonable care in providing the information; and

(4) St. Luke's suffered a pecuniary loss caused by its justifiable reliance on the information received from Great West.

*Richter, S.A. v. Bank of America Nat'l Trust & Sav. Ass'n,* 939 F.2d 1176, 1185 (5th Cir.1991); Restatement (Second) of Torts § 552 (1966). To prevail on its negligence claim St. Luke's must establish that Great West breached its legal duty to provide correct information to health care providers. *See Skipper v. United States,* 1 F.3d 349, 352 (5th Cir.1993). Both causes of action thus require evidence that Great West provided false or incorrect information to St. Luke's.

The only evidence St. Luke's has submitted describing the content of the communications between the hospital and Great West is Madden's affidavit. The court has struck the statements in that affidavit describing the alleged content of those communications. St. Luke's offers no other evidence purporting to show what Great West told St. Luke's. Because St. Luke's has failed to submit competent summary judgment evidence establishing that Great West made false communications, the court will deny St. Luke's motion for summary judgment.[30]

28. *See* William Shakespeare, *The Merchant of Venice,* act iv, scene 1, line 69 ("What, wouldst thou have a serpent sting thee twice?").

29. Great West also contends that the court should deny summary judgment because St. Luke's failed to submit any evidence of damages, which is an element of both causes of action. The court disagrees. Under Rule

56(c), a court may render partial summary judgment on the issue of liability alone without examining damages. St. Luke's only seeks summary judgment on liability; the lack of evidence regarding damages is irrelevant to the issue of liability on summary judgment.

30. Although Great West argues that St. Luke's is not entitled to summary judgment on the negligence and negligent misrepresentation

## VI. *ERISA CLAIMS*

Anticipating that St. Luke's might amend its complaint to add a claim for benefits under ERISA § 502(a),[31] Great West sought summary judgment on such claims on the ground that Great West is not a proper party defendant for an ERISA benefits claim. St. Luke's declined to respond to Great West's arguments because at the time the motion was filed, the hospital had not explicitly alleged a claim under ERISA. "Since Plaintiff has neither pled nor asserted a claim for plan benefits, summary judgment cannot be granted on such a merely *anticipated* claim." (Plaintiff's Response to Defendant's Motion for Summary Judgment ¶ 21, at 9) St. Luke's declared "without waiving any future right to do so, Plaintiff will not address Defendant's argument regarding a claim for plan benefits at this time." (Plaintiff's Response to Defendant's Motion for Summary Judgment ¶ 21, at 9–10) Instead, the hospital proclaimed, "If a claim for plan benefits is asserted in the future, Plaintiff will respond to any motion for summary judgment regarding such a claim at that time." (Plaintiff's Response to Defendant's Motion for Summary Judgment ¶ 21, at 9–10)

The issue of a claim for benefits under ERISA was viable when Great West asked for summary judgment. Great West had removed this case in part on the basis of ERISA preemption. Great West had raised the issue of whether St. Luke's was entitled to benefits under ERISA when it moved for summary judgment on the issue of preemption. ERISA §§ 502(a) and 514(a) do not simply preempt a state-law claim; they also transform the state-law claim into a claim for benefits under ERISA. *See Degan v. Ford Motor Co.,* 869 F.2d 889, 893 (5th Cir.1989); *Hermann Hosp. v. Central States, Southeast & Southwest Areas Health & Welfare Fund,* 962 F.Supp. 993, 997 (S.D.Tex.1997). Thus, the effect of a potential decision by the court upholding Great West's preemption claim would be to transform the preempted claims into claims under ERISA. Thus, those claims became ERISA claims. An ERISA claim for benefits was therefore viable when St. Luke's declined to address Great West's arguments regarding ERISA benefits.

Moreover, St. Luke's subsequently amended its complaint to allege an ERISA claim explicitly. Yet, St. Luke's has not sought to supplement its response to Great West's motion for summary judgment. Because St. Luke's has declined to contest Great West's motion for summary judgment on St. Luke's ERISA benefits claim, the court will grant Great West's motion as to this claim.

## VII. *CONCLUSION AND ORDER*

St. Luke's does not contest Great West's argument that ERISA preempts St. Luke's breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duty claims. These claims are therefore preempted and recharacterized as claims under ERISA. Furthermore, St. Luke's has failed to show that a fact issue precludes summary judgment on any of these recharacterized claims or its express ERISA claim. However, St. Luke's statutory and common-law negligence and negligent misrepresentation claims are not preempted. While St. Luke's has failed to offer competent summary judgment evidence to support a finding of liability on these latter claims, Great West has not sought summary judgment on their merits. Therefore, St. Luke's common-law and statutory negligence and negligent misrepresentation claims remain

---

claims, Great West never seeks summary judgment on these claims in the event that the court were to conclude, as it has, that these claims are not preempted by ERISA.

**31.** When Great West filed its motion for summary judgment, St. Luke's had not explicitly alleged a claim under ERISA. The hospital amended its complaint afterwards, however, to include a claim for benefits under ERISA § 502(a).

viable. Plaintiff's Motion for Summary Judgment (Docket Entry No. 9) is **DENIED.** Defendant's Motion for Summary Judgment (Docket Entry No. 10) is **GRANTED in part** and **DENIED in part.**

The Joint Pretrial Order will be filed by March 5, 1999. Docket call will be on March 12, 1999, at 4:00 p.m., in Court Room 9–B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.