713 S.E.2d 624

**Ex Parte BON SECOURS–ST. FRANCIS XAVIER HOSPITAL, INC., Julia P. Copeland, and James J. Hinchey, Appellants,**

**In re Thomas R. Wieters, M.D., Respondent,**

v.

**Bon Secours–St. Francis Xavier Hospital, Inc., Allen P. Carroll, William B. Ellison, Jr., Jeffrey M. Deal, M.D., and Sharron C. Kelley, Defendants.**

No. 27016.

Supreme Court of South Carolina.

Heard March 2, 2011.

Decided Aug. 1, 2011.

Timothy W. Bouch and Amy E. Melvin, both of Leath, Bouch & Seekings, of Charleston, for Appellants.

Gregg Meyers, of Charleston, for Respondent.

Chief Justice TOAL.

Appellant Bon Secours–St. Francis Xavier Hospital (the Hospital) was a defendant at trial [1] in the underlying civil case. On March 2, 2010, the morning of the trial, Appellants removed the case to federal court for the second time and on the

---

1. Allen P. Carroll, the Administrator of the Hospital; William B. Ellison, Jr, M.D., the President of the Professional Staff; Jeffrey M. Deal, M.D., the President of the Professional Staff following Dr. Ellison; and Sharron C. Kelley, the Medical Staff Coordinator; Pennie Peralta, Senior Nurse Executive; and Esther Lerman Freeman, M.D., a mental health professional, were also named defendants.

same grounds as the initial removal. The federal district court judge again remanded the case to state court. Judge Baxley, the state trial judge, imposed severe sanctions against the Appellants for the delay created by the second removal. Appellants appeal the order for sanctions. We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

The underlying case is a state law civil suit for defamation and civil conspiracy. In 2002, Dr. Thomas R. Wieters was suspended from the medical staff by the Hospital for unprofessional, threatening, and disruptive behavior. In April 2003, the Hospital, pursuant to the Health Care Quality Improvement Act of 1986 (HCQIA) found at 42 U.S.C. §§ 11101–52, filed a report regarding Dr. Wieters's status with the National Practitioners Data Bank (NPDB).[2] In November 2004, Dr. Wieters filed the underlying action in state court.[3] The Hospital's Answer presented many affirmative defenses, including immunity under the HCQIA for any statement reported to the NPDB. In December 2004, Appellants removed the case to federal court for the first time under 28 U.S.C.A. § 1441(b),[4] alleging Dr. Wieters's "right to relief necessarily depends upon resolution of a substantial question of federal law." Dr. Wieters filed a Motion to Remand, asserting the Complaint alleged only state causes of action, and the Hospital could not defend its way into federal court. United States District Court Judge Weston Houck granted Dr. Wieters's motion to remand in January 2005. Five years of discovery and mediation ensued. In 2009, the case was assigned to the Charleston County State Court multi-week docket, and a

---

2. Dr. Wieters was also suspended from Roper Hospital for similar behavior. He filed a similar suit against Roper Hospital after Roper Hospital posted a report with the NPDB. The trial court granted Roper Hospital's motion for summary judgment.

3. The underlying action does not contest the suspension, only the content and publication of the report with the NPDB.

4. This statute reads, in pertinent part:
 Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

detailed scheduling order was issued setting the trial date for March 8, 2010. In early 2010, the defendants at trial filed Motions for Summary Judgment, and the court denied the motions of the Hospital and four senior executives (defendants Carroll, Ellison, Deal, and Kelley).

The state court trial was re-scheduled to begin at 2 p.m. on March 2, 2010. In his February 8 Memo in Opposition to the Motions for Summary Judgment, Dr. Wieters disputed the Hospital's alleged immunity under the HCQIA, stating at several points that the HCQIA expressly allows defamation suits, and further referenced the HCQIA. The trial judge denied the Hospital's motion for summary judgment. On March 1, Dr. Wieters filed his Pretrial Brief and Proposed Jury Instructions, all of which again stated the HCQIA allows for suit when party knowingly makes false statements to the NPDB.

On the morning of March 2, 2010, three hours before the trial was scheduled to begin, Appellants removed the case to the federal district court for the second time, relying upon Dr. Wieters's Pretrial Brief filed the evening before. Appellants claimed the Pretrial Brief, along with the jury instructions and February 8 Memo in Opposition to the Motions for Summary Judgment, constituted "other paper" under 28 U.S.C. § 1446(b).[5] This "other paper," they claimed, indicated that Dr. Wieters was bringing a case under the HCQIA, thereby making removable a previously non-removable case. Thus, Appellants' argument went, Dr. Wieters presented a question of federal law by referencing the HCQIA, and removal then was proper. State Circuit Court Judge Baxley held a hearing at 2 p.m. on March 2 to question the Appellants regarding the removal and to make clear that if the case was remanded back to the jurisdiction of the state court, Appellants could expect sanctions for its misbehavior in waiting until the last minute before trial to remove the case again when Appellants had the

---

5. This statute reads, in pertinent part:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . .

information regarding Dr. Wieters's references to the HCQIA since early February and the grounds for removal were the same as in 2004.

As Judge Baxley expected, United States District Court Judge Houck remanded the case to state court on March 18, 2010. Judge Houck explained in his Order that the Complaint does not state a federal question, nor can one be inferred, and the Complaint has never been amended since his original remand order in 2005. Further, he stated whether the HCQIA creates a private right of action such that Dr. Wieters could bring a claim under the HCQIA has not been determined by the Fourth Circuit Court of Appeals, but that the First, Eighth, Tenth, and Eleventh Circuit Courts of Appeals have all determined that it does not. Judge Houck noted the Hospital raised federal law as a defense, and that is insufficient to create federal question jurisdiction under 28 U.S.C. § 1331 to justify removal. Judge Houck found that "[b]ecause a potential defense will not support federal question jurisdiction under Section 1331, it follows that federal question jurisdiction will not obtain by a mere reference to the HCQIA" in the filing relied upon by the Hospital.

As promised, Judge Baxley issued a Notice of Sanctions Hearing on March 24 for the Appellants to show cause as to why sanctions should not be ordered "for delaying the trial of this case by frivolously filing for removal to the Federal Court on the morning of the day this jury trial was to begin." Dr. Wieters filed for Rule 11 sanctions the following day, requesting reasonable expenses and attorneys' fees. The sanctions hearing was held on April 19, 2010, and Judge Baxley issued his Order for Sanctions on July 1. In his Order, Judge Baxley found the Hospital's second removal was based upon the same grounds as the first removal, was without merit, and was interposed solely for delay. In ordering the sanctions, Judge Baxley considered the complexity of the multi-week docket and the difficulty and expense involved in cancelling one case and calling another. He appeared particularly perturbed by the inference that Appellants had been considering removal since Dr. Wieters filed his February 8 Memo in Opposition, and that the hassle and expense could have been avoided if

Appellants had been upfront with the court regarding its intentions to remove a second time.[6]

The sanctions ordered totaled roughly $68,000.00 and are summarized as follows:

- $53,685.65 for lost income to Dr. Wieters, trial costs and fees, and reasonable attorneys' fees; [7]

- $6,313.00 payable to the South Carolina Judicial Department to reimburse the cost of the salary and benefits of Judge Baxley, his law clerk, and the court reporter for being unable to operate the week for which trial was scheduled;

- $5,000.00 to the Access to Justice Commission for denying the public access to the court during the scheduled trial week, along with a letter to Executive Director Robin Wheeler explaining the reason for the payment;

- $2,550.00 to the Charleston County Clerk of Court to reimburse the cost of summoning and administering the jury panel for that week; and

- $50.00 to each juror for the inconvenience they suffered, along with a letter of apology and explanation.

Appellants appeal those sanctions beyond the lost income, costs, and fees, arguing a good faith removal to federal court cannot be the basis for sanctions, and that the trial judge abused his discretion in the order of sanctions.

## ISSUES

Appellants present the following issues for review:

6. This inference arises from William Cleveland's affidavit, which states Appellants "said that the first time such arguments [allegedly supporting removal] had been made were in Plaintiff's memorandum in opposition to a motion for summary judgment" filed in February. Thus, Appellants were not blindsided by the references to the HCQIA the night before trial, but had been aware of Dr. Wieters' position for nearly one month.

7. These sanctions have been resolved separately by the parties and are not at issue in this appeal.

I. Can removal be the basis for an order of sanctions?

II. Did the trial judge abuse his discretion in ordering sanctions?

### STANDARD OF REVIEW

 A trial court may impose sanctions on a party, a party's attorney, or both for filing a pleading, motion, or other paper to cause delay or when no good grounds exist to support the filing. *See* Rule 11, SCRCP; *Runyon v. Wright,* 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996). "A court imposing sanctions under Rule 11 should, in its order, describe the conduct determined to constitute a violation of the Rule and explain the basis for the sanction imposed." *Runyon,* 322 S.C. at 19, 471 S.E.2d at 162. When reviewing judge's order of sanctions, the appellate court takes its own view of the facts. *Father v. S.C. Dep't of Soc. Servs.,* 353 S.C. 254, 260–61, 578 S.E.2d 11, 14 (2003). "[W]here the appellate court agrees with the trial court's findings of fact, it reviews the decision to award sanctions, as well as the terms of those sanctions, under an abuse of discretion standard." *Id.* at 261, 578 S.E.2d at 14. An abuse of discretion may be found if the trial court's conclusions lack reasonable factual support. *Runyon,* 322 S.C. at 19, 471 S.E.2d at 162.

### ANALYSIS

### I. Ability to Sanction

 Appellants argue they should not have been sanctioned for the second removal because it was done in good faith. We disagree.

 Rule 11 states,

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.

Rule 11, SCRCP. A trial court may impose sanctions on a party, a party's attorney, or both for filing a pleading, motion, or other paper to cause delay or when no good grounds exist to support the filing. *See Runyon,* 322 S.C. at 19, 471 S.E.2d

at 162. The sanctions may include: an order to pay the reasonable costs and attorneys' fees incurred by the party defending against the action brought in bad faith; a reasonable fine to be paid to the court; a reasonable monetary penalty to the party defending the action brought in bad faith; or a directive of a nonmonetary nature designed to deter the party or the party's attorney from bringing any future action in bad faith. *Id.*

We agree with both Judge Baxley's version of the facts and his conclusion that the second removal was not based on good grounds and was interposed solely for delay. While Rule 11 is evaluated by a subjective standard,[8] the rule still may be violated with a filing that is so patently without merit that no reasonable attorney could have a good faith belief in its propriety. We find such is the case here. Regarding the grounds for removal, first, it is clear that although Appellants cite different federal statutes to support their 2004 and 2010 removals, the underlying reason for both removals remains the same—Appellants' alleged defense under the HCQIA. The fact that they relied upon 2010 documents for their second removal does not change the reality that they were attempting to remove primarily because of their asserted defense under the HCQIA. Second, as Judge Houck noted, removal is based upon the claims alleged in the initial pleading. Dr. Wieters's complaint alleged a state law defamation claim, not a federal cause of action, and he never amended his pleading. As a defense, Appellants asserted the HCQIA provided absolute immunity from tort liability for defamation, and any reference Dr. Wieters's later made to the HCQIA was in response to that defense. Dr. Wieters simply asserted the HCQIA permitted the state law claim, meaning that it was not

8. Prior to its 1983 amendment, Rule 11 of the Federal Rules of Civil Procedure provided a subjective standard for determining whether an attorney's actions violated the rule. The amendment, however, changed it to an objective standard. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (recognizing the change from a subjective standard to an objective standard with the 1983 amendment to Rule 11). The South Carolina Rules of Civil Procedure, however, did not undergo a similar amendment. The notes to the rule demonstrate that the subjective standard has not been changed. Rule 11, SCRCP note ("This version of Rule 11(a) is not nearly so stringent as the latest version of the Federal Rule which became effective August 1, 1983.")

preempted or barred by the HCQIA, not that the HCQIA created an individual cause of action under which they were bringing the suit. Viewing all the pleadings and papers in context of each other and the lengthy history of this litigation, we find Appellants could not have formed a good faith belief the second removal was appropriate. We will not approve attorneys engaging in semantic games with the courts and allow artful crafting of "new" grounds for removal when no evidence exists to support a subjective belief that the plaintiff was asserting a federal cause of action.

As to the delay, Appellants were first aware of Dr. Wieters's references to the HCQIA in early February when they received the Memo in Opposition to the Motion for Summary Judgment. Even when Appellants received the pretrial brief and jury instructions the evening before the trial, they did not bring to the court the question of whether the filings created a basis for removal; instead, they sought the advice of a practicing member of the Bar and a law professor on the removability question. Appellants waited until mere hours before the commencement of the multi-week jury trial before filing for removal. Judge Baxley characterized this action as "a thinly veiled effort at a continuance." We agree with Judge Baxley's assessment. We do not suggest that Appellants were under an obligation to seek clarification from the court before filing for removal. However, Appellants continually contend the lateness of their removal was a result of not learning of Dr. Wieters's references to the HCQIA until the eleventh hour. This was simply not the case as they had received nearly identical language in the February 8 memo almost a month before receiving the proposed jury instructions and pretrial brief.

We take this opportunity to state definitively that vexatious removal is sanctionable conduct, and parties will be held accountable for the unnecessary expense and delay caused by abuses of the right to removal.[9] We want to make clear that

---

9. Several other jurisdictions have upheld sanctions for improper and abusive removals. *See ITT Indus. Credit Co. v. Durango Crushers, Inc.*, 832 F.2d 307, 308 (4th Cir.1987) (finding "the removal petition was so patently without merit that the inescapable conclusion is that it was filed in bad faith," thus the federal district court properly imposed sanctions for removing the case when clearly there was no basis for

we do not intend to chill a defendant's exercise of its removal rights, and we are cognizant that a defendant may remove a case up to the very minute before trial. We note that Appellants in this case are not being sanctioned for removing at the last minute—Appellants' behavior goes far beyond simply exercising their right to remove a case to federal court. A finding of vexatious removal should be rare, but the case before us is an extreme one, and the coalescence of all the facts merit appropriate sanctions. Therefore, we find Judge Baxley did not err in ordering sanctions against Appellants.

## II. Propriety of the Sanctions

■ As explained in *Runyon v. Wright*, a trial judge has wide discretion in ordering sanctions. Judge Baxley found Appellants' second removal attempt to be reprehensible and an improper delay tactic that cost the court system and the other party significant resources, time, and money. For that reason, Judge Baxley imposed stiff sanctions. While the unappealed portion of the ordered sanctions are standard and appropriate, we find the sanctions appealed from exceed the bounds of a judge's discretion.

The award to the other party of its detailed, itemized costs and fees incurred as a result of the improper removal plainly is allowed under the express language of Rule 11, SCRCP. However, we find Judge Baxley abused his discretion in going beyond the conventional awards of costs and fees when he required Appellants to reimburse the South Carolina Judicial Department for the cost of the court's salary and benefits for the week it was unable to proceed with the scheduled trial, to reimburse the Charleston County Clerk of Court for the expense it incurred in summoning and administering the jury panel, to pay $5,000.00 to the Access to Justice Commission with a letter of apology to Robin Wheeler, and to pay $50.00 to

removal); *Massad v. Greaves*, 116 Conn.App. 672, 977 A.2d 662 (2009) (state court is the appropriate forum to sanction party for abuse of removal process); *Nodier v. Ungarino & Eckert, LLC*, No. 2006 CA 1461, 2007 WL 1300805, * 7–8 (La.App. May 4, 2007) (state court award of sanctions appropriate for improper removal, but sanctions must solely encompass matters relating to the removal); *Stratton v. Frankwell Inv. Serv., Inc.*, Nos. 01–99–00405–CV, 01–99–00459–CV, 2000 WL 233110, * 3 (Tex.App. Mar.2, 2000) (upholding state trial court's sanction for wrongful removal intended to delay trial).

each juror with a letter of apology. Accordingly, we reverse those sanctions.

CONCLUSION

Under the specific facts of this case, we find Appellants' second attempt at removal to be sanctionable. Further, the appealed sanctions were an abuse of the trial judge's discretion. Therefore, we affirm Judge Baxley's order as modified to remove the sanctions not relating to reimbursing the other party for its costs and fees.

BEATTY and KITTREDGE, JJ., concur. PLEICONES, J., concurring in a separate opinion. HEARN, J., concurring in a separate opinion.

Justice PLEICONES.

I concur but write separately as I would find no sanctionable conduct here.[10] I agree with Justice Hearn that these appellants had a good faith basis for removing this case in March 2010. I disagree with both the majority and with Justice Hearn, however, that it was appellants' burden to take further action after receiving Dr. Wieters' February 8 "Memo in Opposition to the Motion for Summary Judgment." Moreover, having received opinions on March 2 from three attorneys and a law professor that the new assertions in Dr. Weiters' Pre–Trial Brief, filed at 11:48 pm on March 1, rendered the case removable, appellants timely filed this removal motion at 1:07 pm on March 2. In my opinion, the delay occasioned by this request for removal, while inconvenient, is no more than that attendant to any such removal, and therefore I find no evidence it was interposed for delay.

I concur in the majority's decision to reverse all sanctions challenged in this appeal.

Justice HEARN.

I concur in the result reached by the majority. I wholeheartedly agree with the majority's statement that vexatious re-

---

10. In light of this, I would leave for another day the authority of a circuit judge to impose a state sanction for removal where the federal court chose not to impose one under 28 U.S.C. § 1447(c) (1996).

moval can warrant sanctions, and I agree that the sanctions before us on appeal should be reversed. While I further agree with the finding that the second removal was interposed for delay, it is my opinion that Appellants had a good faith belief in the legal underpinnings of the second removal.

In my view, the majority places too much emphasis on the original pleadings filed in this case. All parties agree that based on the district court's resolution of the original removal, the complaint itself does not raise questions of federal law. However, removal is not always "based upon the claims alleged in the initial pleading"; 28 U.S.C. § 1446(b) specifically permits removal "[i]f the case stated by the initial pleading *is not removable*" and it later becomes removable based on an "amended pleading, motion, order or *other paper.*" (emphasis added). At this juncture, we must therefore examine Appellants' belief that these other papers stated a federal question, not whether the complaint implicated questions of federal law.

In 2004, Appellants' removal was premised upon the necessity of resolving substantial questions of federal law raised by a state law cause of action, not traditional federal question jurisdiction.[11] The district court remanded this matter because the only federal questions raised related to Appellants' defenses. However, Appellants did remove specifically on the basis of pure federal question jurisdiction in 2010.[12] Although the complaint itself only raised state law claims, Appellants relied on section 1446(b) to remove based on Dr. Wieters' submissions to the circuit court in the weeks leading up to trial. Appellants accordingly removed because these other papers—the memorandum, pre-trial brief, and proposed jury instructions stating that the HCQIA grants "explicit authority" for his claims and even preempts certain areas of state

---

11. This is known as the "litigation provoking problem." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In those cases, jurisdiction is not premised on the existence of federal law creating a cause of action, but instead on the "presence of a federal issue in a state-created cause of action." *Id.* at 809–10, 106 S.Ct. 3229.

12. Appellants also reargued the 2004 grounds in the alternative. It is in response to these reargued grounds that the district court repeated that federal questions raised solely as a defense are not a sufficient basis for removal.

law—purported to raise a federal law-based claim. Thus, contrary to the view of the circuit court and accepted by the majority, Appellants did not seek to remove on the same grounds in 2010 as they did in 2004. Furthermore, the second removal was not based on Appellants' defenses, but rather on Dr. Wieters' statements that *he* was bringing his claims under the explicit authority of federal law.

Given the statements contained in Dr. Wieters' filings and the advice Appellants sought from their general counsel, counsel for their insurance company, a law professor, and a highly respected local attorney, I believe the only reasonably conclusion is that Appellants had a good faith basis for removal in 2010. Based on the record before the Court, it is purely conjectural to conclude otherwise. Additionally, in my opinion the removal was not based on frivolous grounds but rather on the novel issue within the Fourth Circuit of whether the HCQIA provides for an independent cause of action. The fact that the district court predicted the Fourth Circuit would not find a private cause of action has no bearing on Appellants' subjective beliefs. Therefore, this is not a situation with "attorneys engaging in semantic games with the courts" but rather attorneys paying close attention to arguments made by their adversaries during litigation. While this undoubtedly is a fine line to walk, the record before us in this case convinces me that Appellants had a good faith belief in the grounds supporting the second removal.

However, I agree with the circuit court's conclusion that the removal was interposed for delay. I too wish to reiterate that a defendant generally has a right to remove a case up to the start of trial. Holding otherwise would undoubtedly chill the statutory right a defendant has to remove a case to federal court. The record shows Appellants received notice of Dr. Wieters' arguments knowing full well that the trial had a date certain set less than one month away. Moreover, Appellants could and should have sought clarification from Dr. Wieters or taken some other action to determine whether he was raising a federal question before receiving the additional filings on the eve of trial. Given the impending date certain for trial, there certainly were steps Appellants could have taken to ameliorate the inevitable delay their removal would cause. Because they

did not do so in spite of this knowledge, I do not believe the circuit court abused its discretion.