# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00322-SCT

*IN THE MATTER OF THE GUARDIANSHIP OF*
*O. D., A MINOR: ASHLEY HEALTHCARE PLAN*

*v.*

*MICHAEL DILLARD AND KIMBERLY DILLARD,*
*AS BIOLOGICAL PARENTS AND NEXT*
*FRIENDS OF O.D., A MINOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/2014 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |
| TRIAL COURT ATTORNEYS: | MARK NOLAN HALBERT |
| | JAMES GREGORY BROWN |
| | JASON R. HOLLINSWORTH |
| | JACK HAMILTON HAYES, JR. |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARK NOLAN HALBERT |
| ATTORNEY FOR APPELLEES: | JAMES GREGORY BROWN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     O.D., a minor child, filed a petition in Pontotoc County Chancery Court for approval

of a settlement her parents had negotiated with car insurance companies for injuries she had

suffered in  a car accident. On the day of the hearing, Ashley Healthcare Plan, O.D.'s health

insurance coverage provider, which had a subrogation lien against the proceeds of O.D.'s

claim,  removed the case to federal court, arguing that the Mississippi law which required the

chancery court's approval of O.D.'s settlement claims, Mississippi Code Section 93-13-59, was preempted by the federal Employment Retirement Income Security Act of 1974 ("ERISA"). The United States District Court for the Northern District of Mississippi held that ERISA did not preempt the state law and remanded the case to the chancery court without awarding attorney's fees to O.D. On motion from O.D.'s parents, the Pontotoc County Chancery Court awarded O.D. attorney's fees, holding that Ashley Healthcare Plan's removal to federal court was contrary to clearly established law and that it was done for the purpose of delaying litigation. Although O.D. could have sought recovery of attorney's fees under Rule 54 of the Federal Rules of Civil Procedure, frivolous removals to federal court also are subject to the Mississippi Litigation Accountability Act. Miss. Code Ann. §§ 11-55-1 to 11-51-15 (Rev. 2012). Furthermore, Ashley Healthcare Plan's removal to federal court was contrary to two decades of case law which uniformly held that Mississippi's law requiring chancery court approval of minors' settlements is not preempted by ERISA and that Ashley Healthcare Plan was seeking a remedy in federal court that was unavailable to it under the ERISA Civil Enforcement Clause. We therefore affirm the judgment of the chancery court because its award of attorney's fees on this basis was not an abuse of discretion.

**FACTS AND PROCEDURAL HISTORY**

¶2. On March 6, 2011, Mercedes Navarette failed to yield the right-of-way to oncoming traffic on Highway 278 in Pontotoc County and struck a car driven by Kimberly Dillard. Dillard's three-year-old daughter, O.D., was in the back seat. As a result of the collision,

O.D. suffered significant injuries. Her right leg was fractured, and she had bruises on her face, scalp, neck, and thigh. O.D. was airlifted to Le Bonheur Children's Hospital in Memphis. For the treatment of her leg, O.D. spent three nights in the hospital and had two separate surgeries.

¶3. Later that summer, on August 21, 2011, O.D.'s parents, Kimberly Dillard and Michael Dillard, petitioned the Pontotoc County Chancery Court for appointment as O.D.'s general guardians.[1] The Chancery Court granted that petition. The purpose of the Dillards' guardianship over O.D. was to pursue a claim for the child's personal injuries and medical care. As the court-appointed general guardians for O.D., the Dillards engaged in settlement negotiations with Allstate Insurance Company, Navarette's insurance carrier. The Dillards submitted, for the Pontotoc County Chancery Court's approval, a compromise settlement of $25,000, Naverette's liability insurance policy's maximum limit of applicable coverage. The Dillards also made an uninsured/underinsured claim against their own automobile insurance carrier, State Farm Insurance Company. The Dillards obtained a settlement offer from State Farm for $50,000, its policy limit.

---

[1] The natural parents of a minor are the child's natural guardians, and they are responsible for the care, maintenance, and education of their child/ward. Miss. Code Ann. § 93-13-1 (Rev. 2013). The chancery court, however, is empowered to appoint general guardians (i.e., legal) to represent the legal interests of the minor. Miss. Code Ann. § 93-13-15 (Rev. 2013).

¶4.    In accordance with Mississippi law regarding minors' legal settlements,[2] on October 13, 2011, the Dillards filed a Petition for Authority to Settle and Compromise Doubtful Claim of Minor.  The Dillards sought approval from the Pontotoc County Chancery Court of the settlement of O.D.'s claims against both State Farm Insurance and Allstate Insurance for a total of $75,000, which was all of the available liability insurance coverage.

¶5.    In addition to informing the chancery court of the settlement offers, the petition averred that Ashley Furniture Industries maintained an employer-funded healthcare plan and that the plan was established under the Employee Retirement Income Security Act of 1974 (ERISA). Because O.D. was a minor child and dependent of her father, Michael Dillard, an employee of Ashley Furniture Industries at its Ecru factory, O.D. was a covered beneficiary of the plan. During the course of O.D.'s car-wreck-related medical treatment, the Ashley Healthcare Plan ("the plan")  had paid $33,683.58 toward O.D.'s medical bills.  The plan previously had asserted its intention to enforce a subrogation lien, contained within the language of the plan, for the amount of all of O.D.'s medical bills against all sums O.D. might receive from the automobile insurance companies. The Dillards requested of the chancery court that the car insurance settlement proceeds be distributed for the minor's

---

[2]Miss. Code Ann. § 93-13-59 (Rev. 2013):

> Guardians may be empowered by the court, or chancellor in vacation, to sell or compromise claims due their wards, on the same proceedings and under the same circumstances prescribed in reference to the sale or compromise by an executor or administrator of claims belonging to the estate of a deceased person. And the guardian in such case is authorized to receive in satisfaction of claims, when to the interest of the ward, property, real or personal, the title to be taken in the name of the ward.

exclusive benefit, i.e., paid to the minor. To this end, the Dillards also sought denial of reimbursement to the plan for the medical expenses paid on her behalf on account of the accident .

¶6.     On October 14, 2011, the Dillards served on the plan a summons under Rule 81 of the Mississippi Rules of Civil Procedure, along with their Petition for Authority to Settle and Compromise Doubtful Claim of Minor. The summons directed Ashley Healthcare Plan to appear at a hearing at 9:30 a.m. on November 14, 2011, at the Pontotoc County Chancery Court to assert its claimed subrogation lien against O.D.'s settlement.

¶7.     On November 14, 2011, the day that the Pontotoc County Chancery Court was to conduct the hearing on settlement of O.D.'s insurance claims, the plan removed the case to the United States District Court for the Northern District of Mississippi, asserting that O.D.'s "claim against [Ashley Healthcare Plan] falls within the scope of ERISA's civil enforcement statute . . . and is completely preempted and is therefore removable."

¶8.     On November 17, 2011, the Dillards filed a Motion to Remand the case, arguing that the United States District Court for the Northern District of Mississippi has "held that the Employment Retirement Income Security Act of 1974 ('ERISA') does not preempt Mississippi law, which requires chancery court approval for the administration of a minor's estate. Therefore this case must be remanded to state court for lack of subject matter jurisdiction." The Dillards further alleged that "this case was removed for the improper purpose of avoiding or delaying the finality of the administration of the minor's estate currently pending in the Chancery Court of Pontotoc County, Mississippi." The Dillards also

5

moved under 28 U.S.C. § 1447 for attorney's fees incurred by them as a result of Ashley's removal of the case to federal court.

¶9.     On December 12, 2011, the plan filed a Response to the Dillards' Motion to Remand, arguing that "[t]he only question before the Court is whether or not Plaintiffs' well-pleaded complaint filed in state court raises a claim within the federal subject matter jurisdiction of this Court." Again, the plan averred that O.D.'s claim in chancery court fell squarely within ERISA's enforcement provisions and that her claims were completely preempted by federal law.

¶10.    Nearly two years after the plan had removed the case to federal court, on September 27, 2013, the United States District Court for the Northern District of Mississippi remanded the case to Pontotoc County Chancery Court. The Memorandum Opinion held that "the administration of a minor's estate is entirely a matter of state law, and is law of general application which affects a broad range of matters entirely unrelated to ERISA." The district court held that the Dillards' claim for approval of the minor's settlement was not preempted by ERISA and found that Ashley Healthcare Plan's claim for reimbursement did not constitute a cognizable claim under the ERISA civil enforcement statute. Although the Dillards had asserted a claim for attorney's fees incurred during the course of the remand pursuant to 28 U.S.C. § 1447, they did not renew their request for fees by filing a Federal Rule of Civil Procedure 54(d) motion in federal court.

¶11.    Instead, on October 29, 2013, the Dillards filed a motion for attorney's fees under the Mississippi Litigation Accountability Act of 1988 (Miss. Code Ann. §§ 11-55-1 to 11-51-15

6

(Rev. 2012)) in Pontotoc County Chancery Court, arguing that the plan's removal of O.D.'s case to federal district court had been "frivolous, filed for the purpose of harassment and delay, and did not have support in law or fact."

¶12. On December 4, 2013, the chancery court conducted a hearing to address the Dillards' motion for attorney's fees and to settle O.D.'s insurance claims. During the course of the hearing, the chancery court allowed O.D.'s parents, as her general guardians, to settle her claims with both automobile insurers for $75,000. The chancery court also refused to enforce the plan's subrogation lien; the plan was not reimbursed for the moneys it had paid for O.D.'s accident-related health care.

¶13. On February 6, 2014, the chancery court awarded attorney's fees to the Dillards in accordance with the Litigation Accountability Act for Ashley Healthcare Plan's improper removal of the case to federal court. In his thirteen-page written order, the chancellor reasoned that the issue of attorney's fees was properly before the court because "there was no determination made by the federal court concerning attorney's fees nor was the issue of attorney's fees considered by the federal court." The court further held that "[t]he only purpose for removal of the minor's settlement . . . was for Defendants to engage in forum shopping and delay the final outcome of this matter." The court found that "[d]efendants, following commencement of their removal of a minor's settlement to federal court, failed to make any effort to dismiss their removal action after being provided numerous cases directly on point which irrefutably held that their basis for removal was invalid." After discussing

the factors outlined in the Litigation Accountability Act, the chancery court awarded the Dillards $18,180 in attorney's fees.

¶14.   Ashley Healthcare Plan now appeals the award of attorney's fees.  There are two issues before this Court: (1) whether the Litigation Accountability Act enables Mississippi courts to sanction litigants for frivolous removals and (2) whether the Pontotoc County Chancery Court abused its discretion in holding that Ashley Healthcare Plan frivolously removed this case to federal court.

## DISCUSSION

### I. Does the Litigation Accountability Act enable Mississippi courts to sanction litigants for frivolous removals?

¶15.   Whether a chancery court is allowed to award attorney's fees under the Litigation Accountability Act for a frivolous removal to federal court is a matter of first impression before this Court.  When the imposition of attorney's fees raises a question of law, the standard of review is *de novo*. *See **Amiker v. Drugs for Less, Inc.***, 796 So. 2d 942, 945-46 (Miss. 2001).

¶16.   It is undisputed that, in their Motion for Remand, the Dillards claimed they were entitled to attorney's fees under 28 U.S.C. § 1447 because Ashley Healthcare Plan's removal to federal court was frivolous.  But the Dillards never pursued a motion for attorney's fees under Rule 54 of the Federal Rules of Civil Procedure, the proper means for obtaining fees in federal courts. According to the plan, the only means of recovery for the frivolous removal of a case to federal court is filing a motion for attorney's fees and costs under Rule 54 of the Federal Rules of Civil Procedure. Thus, the plan argues that, because the Dillards did not file

8

a Rule 54 motion in federal court, they are precluded from filing a motion for attorney's fees in Mississippi state court under the Litigation Accountability Act.

¶17.    Whether the Dillards could or should have pursued attorney's fees in federal court is irrelevant.  The relevant inquiry here is whether the Dillards could pursue attorney's fees in chancery court under the Litigation Accountability Act for the plan's frivolous removal. The Litigation Accountability Act provides in pertinent part:

> [I]n any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct . . . .

Miss. Code Ann. § 11-55-5(1) (Rev. 2012).  The statute contains no express language which prohibits a judge's imposition of attorney's fees for frivolous removals to federal court.  In fact, insofar as a party must file a notice of removal in state court in order to remove the case to federal court, and assuming the removal to have been frivolous, this would fall squarely within the parameters of the statute, which enables Mississippi judges to levy fees against parties who "asserted any claim or defense . . . that is without substantial justification," who "asserted . . . any claim or defense . . . for delay or harassment," or "who unnecessarily expanded the proceedings by other improper conduct."  The fact is that removal has a tremendous impact on the chancery court's (or any other state court's) ability to adjudicate a case in a timely manner in that removal completely deprives the state court of jurisdiction

9

over the matter. *See Allman v. Hanley,* 302 F.2d 559, 562 (5th Cir. 1962) ("Upon the filing of a proper petition for removal and upon compliance with the applicable statutes, the state court loses jurisdiction and all further process must issue from the Federal court." ) (citing 28 U.S.C. §§ 1446(e), 1447(a); F.R.C.P 81(c). Moreover, a notice of removal constitutes a claim that state court jurisdiction over the matter is improper and a defense against the state court's continued exercise of jurisdiction over the claims. *See Hooker v. Greer*, 81 So. 3d 1103 (Miss. 2012) (noting that the Litigation Accountability Act extends to "any separate count, claim, defense or request for relief"). In this case, Ashley Healthcare Plan's removal suspended the Pontotoc County Chancery Court's jurisdiction for two years, preventing that court's approval of the settlements of O.D.'s claims against Allstate Insurance Company and State Farm Insurance Company.

¶18.   Courts from other states have addressed the levy of attorney's fees against parties for frivolous removal of  state court cases to federal court. For example, in *Ex Parte Bon Secours-St. Francis Xavier Hosp., Inc.*, 713 S.E. 2d 624 (S.C. 2011), the South Carolina Supreme Court considered the trial court's imposition of sanctions and attorney's fees for a frivolous removal action pursuant to Rule 11 of the South Carolina Rules of Civil Procedure. In *Bon Secours,* the party improperly removed a case to federal district court twice, the second time just hours before trial was to commence. *Id.* at 626-27; *see Hooker v. Greer*, 81 So. 3d 1103 (Miss. 2012) ("The provisions of the [Litigation Accountability Act] are in harmony with those of Mississippi Rule of Civil Procedure 11, which allows for the awarding of attorney's fees as a sanction. The LAA merely augments Rule 11 by 'stating that the court

shall specifically set forth the reasons for awarding attorney fees and costs and enumerates factors which shall be considered by the court.'") (internal citations omitted). The South Carolina Supreme Court held that "vexatious removal is sanctionable conduct, and parties will be held accountable for the unnecessary expense and delay caused by abuses of the right to removal." *Id.* at 629. Similarly, courts from Texas and Louisiana have supported the use of sanctions under their respective laws regarding sanctions and attorney's fees. *See Stratton v. Frankwell Inv. Serv., Inc.*, Nos. 01-99-00405-CV, 01-99-00459-CV (Tex. Ct. App. Mar. 2, 2000); *Nodier v. Ungarnino & Eckert, LLC*, 2007 WL 1300805 (La. App. 1st Cir. May 4, 2007).

¶19. In conformity with the plain meaning of the Mississippi Litigation Accountability Act, we hold that the imposition of attorney's fees as sanctions for frivolous removal is within the powers of Mississippi courts. Federal court does not provide the exclusive remedy for attorney's fees incurred as a result of frivolous removals.

> **II. Did the Pontotoc County Chancery Court abuse its discretion in holding that Ashley Healthcare Plan frivolously removed this case to federal court?**

¶20. This Court reviews a trial court's award of attorney's fees under the Litigation Accountability Act for an abuse of discretion. *Choctaw, Inc. v. Campbell-Cherry-Harrison-Davis & Dove*, 965 So. 2d 1041, 1045 n.6 (Miss. 2007).

¶21. Ashley Healthcare Plan argues on appeal that its removal of O.D.'s settlement to federal court was not without substantial justification and that the chancery court therefore erred by awarding the Dillards attorney's fees. The Dillards respond that the plan's removal

11

to federal court was contrary to clearly established law and that attorney's fees were awarded

on the basis of the plan's improper removal and the plan's failure to meet court deadlines.

The record makes clear, however, that the chancery court did not consider anything other

than the improper removal to federal court in deciding to award attorney's fees.

> **A. Did the Pontotoc County Chancery Court abuse its discretion in determining that Ashley Healthcare Plan removed this case to federal court without substantial justification?**

¶22. In relevant part, the Mississippi Litigation Accountability Act provides:

> In any civil action commenced or appealed in any court of record in this state, the court shall award . . . reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action . . . that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment . . . .

Miss. Code Ann. § 11-55-5(1) (Rev. 2012).[3] The Act defines a claim brought "without

substantial justification" to be one that is "frivolous, groundless in fact or in law, or

vexatious, as determined by the court." Miss. Code Ann. § 11-55-3(a) (Rev. 2012). This

Court applies the same test to determine whether a filing is frivolous under both Rule 11 and

---

[3] The plan also directs us to Mississippi Code Section 11-55-5(4):

> No party, except an attorney licensed to practice law in this state, who is appearing without an attorney shall be assessed attorney's fees unless the court finds that the party clearly knew or reasonably should have known that such party's action, claim or defense or any part of it was without substantial justification.

This provision applies only to *pro se* litigants and should not affect the Court's analysis in this case.

12

the Act. A claim is frivolous when, "objectively speaking, the pleader or movant has no hope of success." **Leaf River Forest Prods., Inc. v. Deakle**, 661 So. 2d 188, 195 (Miss. 1995) (internal citation omitted).

¶23.    The Pontotoc County Chancery Court, in a thirteen-page order, justified its award of attorney's fees under the Litigation Accountability Act.  The court held that "the actions of the Ashley Healthcare Plan in delaying the minor settlement along with their failure to ascertain the law and jurisdiction as to minor's settlements demonstrates an award against the Ashley Healthcare Plan under the Litigation Accountability Act is proper."   The chancery court further reasoned that the plan had represented to the federal court that:

> [A]lthough there was no written subrogation agreement with the Plaintiffs, any decision by the chancellor concerning the minor's rights to settlement proceeds was within the exclusive jurisdiction of federal courts.  This statement . . . directly contradicts prior established case law that ERISA does not preempt Mississippi law requiring chancery court approval of minor's settlements.

The chancery court held that Ashley Healthcare Plan "failed to make any effort to dismiss their removal action after being provided numerous cases directly on point which irrefutably held their basis of removal was invalid." The chancery court noted that the relief sought by the plan was not allowed by ERISA's Civil Enforcement Provision.  Finally, the chancery court found that "[t]he only purpose for removal of the minor's settlement from the Chancery Court of Pontotoc County, Mississippi to the United States District Court for the Northern District of Mississippi was for Defendants to engage in forum shopping and delay the final outcome of this matter."

13

¶24. Because the chancery court's award of attorney's fees is inextricably intertwined with its determination that it was clearly established that the chancery court's statutory duty to approve the settlement of O.D.'s liability insurance claims was not preempted by ERISA, we proceed to address the merits of the plan's ERISA arguments.

**B. Was the remedy Ashley Healthcare Plan sought in federal court available under ERISA's enforcement provision?**

¶25. On appeal, the plan asserts that it was seeking a declaratory judgment in federal court concerning interpretation of the plan document itself. This, however, is not how the United States District Court for the Northern District of Mississippi characterized the plan's notice of removal. Instead, that court interpreted the plan's claim to be one for "reimbursement." In essence, the plan was seeking enforcement of its subrogation clause in federal court.

¶26. The Civil Enforcement Provision of ERISA, Section 502(a), the provision under which the plan was seeking relief in federal court, states:

> A civil action may be brought—(1) by a participant or beneficiary . . .
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).

¶27. In *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993), the United States Supreme Court made clear that the term "equitable relief" in ERISA's Civil Enforcement Provision referred only to "those types of relief that were typically available in equity." *Id.* at 256. The United States Supreme Court revisited the ERISA Enforcement Provision in *Great-West Life & Annuity Insurance Co. v. Knudson*,

14

534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002). In *Knudson*, the employee benefit plan at issue included a reimbursement provision which stated that the plan had "the right to recover from a beneficiary any payment for benefits paid by the Plan that the beneficiary is entitled to recover from a third party." *Id.* at 711. The Court held that, by attempting to obtain reimbursement, Great-West was not seeking "to enjoin any act or practice which violate [d] . . . the terms of the plan" or "to obtain other appropriate equitable relief" under Section 502(a)(3). *Id.* Declining to construe Great-West's complaint as seeking a remedy that was "typically available in equity" as *Mertens* requires, the Court reasoned that Great-West essentially sought "to impose personal liability on [the Knudsons] for a contractual obligation to pay money–relief that was not typically available in equity." *Id.*

¶28.    Similarly, in *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 442 (5th Cir. 2002),[4] the United States Court of Appeals for the Fifth Circuit addressed an insurance company's attempt to enforce a subrogation clause against a minor under the ERISA enforcement statute. *Copeland*, 292 F.3d at 442. The Fifth Circuit held that ERISA's civil enforcement provision failed to authorize plaintiff's suit, as the claim for reimbursement was a claim for money due and owing under a contract and not an equitable remedy as required under

---

[4] This is the same *Copeland* case that was dismissed by the Northern District of Mississippi for lack of subject-matter jurisdiction. *Bauhaus USA, Inc. v. Copeland*, 2001 WL 1524373 (N.D. Miss. Mar. 9, 2001). On appeal, the Fifth Circuit did not reach the preemption issue with regard to Section 93-13-59 (Rev. 2014). Instead, the court held that it did not have subject-matter jurisdiction because the remedy the insurance plan sought, enforcement of a subrogation clause, was not cognizable under the ERISA enforcement provision. *Copeland*, 292 F.3d at 442. Later, in *ACS Recovery Services, Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013), the *en banc* Fifth Circuit overruled *Copeland* and held that failure to state a cognizable claim under the ERISA Enforcement Provision did not inherently deprive federal courts of subject-matter jurisdiction.

15

ERISA. *Id.* at 443-45. Indeed, the Fifth Circuit, in comparing the *Copeland* case to the United States Supreme Court case *Knudson* noted the following:

> Both cases involve ERISA-governed employee benefit plans that include reimbursement provisions allowing the plans to recover from any settlement proceeds any amount the plans advanced for medical expenses resulting from third party wrong-doing. Third-party tortfeasors injured the plan beneficiaries in both cases, and the plans advanced funds to the beneficiaries for medical expenses. In both cases, the plan beneficiaries made tort settlements with third-party tortfeasors following suit in state court. In both, the plan administrator or assignee filed suit in the federal district court seeking declaratory relief that it was entitled to repayment of the benefits it had conferred. In the instant case, the settlement proceeds are in the registry of the Mississippi Chancery Court. In [*Knudson*], the proceeds of the settlement were placed in a private Special Needs Trust outside the possession and control of the plan beneficiary.

*Copeland*, 292 F.3d at 445.

¶29.    It is therefore clear that, in the light of the United States Supreme Court's decision in *Knudson* and the Fifth Circuit's corresponding decision in *Copeland*, Ashley was seeking a remedy in federal court that did not exist under the ERISA Enforcement Provision.  By removing the case to federal court, the plan failed to state a claim that was cognizable under federal law.

¶30.    The dissent fails to acknowledge that Ashley was pursuing a remedy, and thus a cause of action, that was unavailable to it under federal law.  Thus, when the dissent bemoans that Ashley's attorneys"did nothing more than advance a legal theory," it stops short of holding Ashley's lawyers responsible for minimal legal research and diligence. Dissent ¶ 46. Because United States Supreme Court and Fifth Circuit precedents explicitly foreclose Ashley from seeking damages in federal court under the ERISA enforcement provision, it

16

is well established that, even if a legitimate argument could credibly be made that Mississippi Code Section 93-13-59 was preempted by ERISA, Ashley's removal immediately would have been dismissed for failure to state a claim upon which relief could be granted. Thus, if considered on the merits, the plan's removal would be subject to summary dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This supports the chancellor's finding, which we subject to a review for an abuse of discretion, that Ashley Healthcare Plan frivolously removed this case to federal court.

> **C. Was it well established that ERISA does not preempt Mississippi Code Section 93-13-59, the Mississippi law requiring chancery court approval of minors' claims and settlements?**

¶31. At this point, the debate is settled that the district court unequivocally did not have subject-matter jurisdiction over this case. Thus, the only issue in contention is whether Ashley Healthcare Plan removed this case contrary to settled law.

¶32. The federal removal statute authorizes removal to federal court of a civil action filed in state court if the claim is one "arising under" federal law or if there is diversity jurisdiction and the defendant is not a citizen of the state where the action is brought.[5] *See* 28 U.S.C. § 1441(b) (2000). As the United States Supreme Court has explained:

> To determine whether the claim arises under federal law, we examine the "well pleaded" allegations of the complaint and ignore potential defenses: A suit arises under the Constitution and the laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States. As a

---

[5] Here, O.D.'s tort claims were the "mainspring" of the case. There was no affirmatively alleged federal claim which gave rise to federal jurisdiction.

17

general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S. Ct. 2058, 2062, 156 L. Ed. 2d 1 (2003).

¶33.    There is an exception to the well-pleaded complaint rule, though, if Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)*, superseded by statute on other grounds as recognized in,* *Hunter v. Ameritech*, 779 F. Supp. 419 (N.D. Ill.1991).

¶34.    ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a).  Preemption under ERISA is "deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S. Ct. 1549, 1552, 95 L. Ed. 2d 39 (1987). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 2900, 77 L. Ed. 2d 490 (1983); *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1994). A state law may "relate to" a plan "even if that law was not specifically designed to affect such plans, and even if its effect is only indirect." *Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir. 1996) (citing *Rozzell v. Sec. Servs., Inc.*, 38 F.3d 819, 821 (5th Cir. 1994)). Nonetheless, ERISA preemption is not all-encompassing, and state actions which affect employee benefit plans in "too tenuous, remote, or peripheral a manner" will not justify a finding that the law "relates to" a plan. *Shaw*, 463 U.S. at 100 n.21.

18

¶35. As a general rule, there is an assumption that state laws concerning domestic relations are "too tenuous, remote, or peripheral" to be preempted by ERISA. *See id.* The United States Supreme Court repeatedly has noted that, in enacting ERISA, "Congress [did] not intend to preempt areas of traditional state regulation." ***FMC Corp. v. Holliday***, 498 U.S. 52, 62, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." ***Hisquierdo v. Hisquierdo***, 439 U.S. 572, 581, 99 S. Ct. 802, 808, 59 L. Ed. 2d 1 (1979) (quoting ***In re Burrus***, 136 U.S. 586, 593-94, 10 S. Ct. 850, 853, 34 L. Ed. 500 (1890)). "Because domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area." ***Mansell v. Mansell***, 490 U.S. 581, 587, 109 S. Ct. 2023, 2028, 104 L. Ed. 2d 675 (1989). As a consequence, federal law will preempt a state law pertaining to domestic relations only if: 1) Congress has positively expressed its intent to preempt the state law and 2) the state law does major damage to a clear and substantial federal interest. ***Boggs v. Boggs***, 849 F. Supp. 462, 465 (E.D. La. 1994) (citing ***Hisquiedo***, 439 U.S. at 581), *aff'd* 82 F.3d 90, *rev'd* 520 U.S. 833, 117 S. Ct. 1745, 138 L. Ed. 2d 45 (1997).

¶36. The current case arose from the Mississippi chancery courts' duties under Section 93-13-59 of the Mississippi Code, which provides:

> Guardians may be empowered by the court, or chancellor in vacation, to sell or compromise claims due their wards, on the same proceedings and under the same circumstances prescribed in reference to the sale or compromise by an executor or administrator of claims belonging to the estate of a deceased

19

person. And the guardian in such case is authorized to receive in satisfaction of claims, when to the interest of the ward, property, real or personal, the title to be taken in the name of the ward.

Miss. Code Ann. § 93-13-59 (Rev. 2013). This statute does not contain language which expressly implicates an ERISA plan. *See id.* Moreover, in **Cooper Tire & Rubber Co. v. Striplin**, 652 So. 2d 1102, 1104 (Miss. 1995), this Court held that "[t]he subject of minors' estates is a matter within the field of domestic relations not governed by ERISA." Also, in **In re Guardianship of Holmes**, 965 So. 2d 662, 664 (Miss. 2007), this Court held that:

> Family law is an area traditionally regulated by the states. There is a presumption against pre-emption. Although ERISA does state its intent to pre-empt state law by positive enactment, there is no clear intention of Congress to pre-empt cases dealing with minors' rights. Moreover, there is no damage to any clear and substantial federal interest.

*Id.* at 668. Thus, Section 93-13-59 falls within the realm of traditional domestic relations and does not expressly implicate an ERISA plan.

¶37. The question of whether Section 93-13-59 is preempted by ERISA is an issue of federal subject-matter jurisdiction. *See **Metro. Life Ins. Co. v. Taylor***, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). The constitutional limitations on federal jurisdiction make federal courts "courts of limited jurisdiction," **Owen Equipment & Erection Co. v. Kroger**, 437 U.S. 365, 374, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978), *superseded by statute on other grounds by,* 28 U.S.C. § 1367, as opposed to state courts, which presumptively have subject-matter jurisdiction over all cases. *See* 13 Charles Alan Wright, and Arthur R. Miller, *Federal Practice and Procedure* § 3522, 100 (3d ed. 2008). Thus, if the statute is not preempted, the federal court does not have jurisdiction over the case and the removal was

improper. Moreover, federal courts have the ultimate authority to determine their own jurisdiction. *United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002). Because federal courts decide whether federal jurisdiction is proper and state courts cannot impose jurisdiction on federal courts, we will address federal precedent regarding ERISA preemption of Section 93-13-59. *See Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm'n v. Thora*, 328 F.3d 325, 327 (7th Cir. 2003) ("Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by *federal statute*.") (emphasis added).

¶38. Inasmuch as the United States District Court for the Northern District of Mississippi has held in three separate cases that ERISA does not preempt the Mississippi law requiring the chancery court to settle the claims of minors, this principle was well established. *See Clardy*, 921 F. Supp. at 394; *Bauhaus USA, Inc. v. Copeland*, 2001 WL 1524373 (N.D. Miss. Mar. 9, 2001); *Estate of Ashmore v. Healthcare Recoveries, Inc.*, 1998 WL 211778 (N.D. Miss. Mar. 25, 1998). The case most instructive to this Court's consideration of the merits of Ashley's arguments is *Estate of Ashmore v. Healthcare Recoveries, Inc.*, 1998 WL 211778 (N.D. Miss. Mar. 25, 1998). In *Ashmore*, the court found no preemption "since adjudication does not require construing the ERISA plan." *Id.* at *2. The court further opined that "*[e]ven if the parties' ERISA plan contained an express subrogation clause, Mississippi law requiring prior chancery court approval of assignment of a minor's right to insurance proceeds would not be preempted by ERISA.*" *Id.* (citing *Methodist Hosp. of Memphis v. Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988)) (emphasis added).

21

¶39. Ashley Healthcare Plan asserts that this case is distinguishable because the subrogation lien was written into the ERISA plan document itself. This argument ignores the plain language of the *Ashmore* decision, to the effect that, "[e]ven if the parties' ERISA plan contained an express subrogation clause, Mississippi law requiring prior chancery court approval of assignment of a minor's right to insurance proceeds would not be preempted by ERISA." *Estate of Ashmore v. Healthcare Recoveries, Inc.*, 1998 WL 211778, at *2 (N.D. Miss. Mar. 25, 1998). Moreover, it is deaf to the district court's decision in *Copeland*, which held that, even though the ERISA plan contained an express subrogation clause, the statute was not preempted. *Copeland*, 2001 WL 1524373.

¶40. The plan further suggests that the precedent from the United States District Court for the Northern District of Mississippi is distinguishable because this case is procedurally different. The procedural posture of a case has no bearing on the issue of preemption. Preemption exists if Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). Thus, whether Section 93-13-59 encroaches on ERISA is the relevant question in determining federal jurisdiction over this case (which the United States District Court for the Northern District of Mississippi has held it does not have), not the procedural posture of the case.

¶41. The plan and the dissent argue that preemption with regard to Mississippi Code Section 93-13-59 is an "unresolved issue," because the United States Court of Appeals for the Fifth Circuit has not yet addressed it. This ignores the manner in which federal appellate courts

22

exercise jurisdiction over remands for improper removal. Congress has circumscribed the power of federal appellate courts to review remand orders. *See **Schexnayder v. Entergy Louisiana, Inc.,*** 394 F. 3d 280, 283 (5th Cir. 2004). United States Code Section 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). Specifically, an order for remand is not appealable if it is based on either a defect in removal procedure or because the district court lacked subject-matter jurisdiction. ***Quackenbush v. Allstate Ins. Co.***, 517 U.S. 706, 712, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996). Thus, a Fifth Circuit decision on the merits of these cases would do nothing to clarify the law any further, because that court has no jurisdiction over the remand and cannot render a decision on the merits. In the unlikely event that such a decision were rendered, it would be a nullity, utterly deprived of precedential value. The dissent avers that "when a district court exercises jurisdiction over a case, the jurisdictional question could be raised on appeal." This is the very reason a Fifth Circuit decision would never come about: no district court has exercised jurisdiction over these cases before remanding them to state court. The United States District Court for the Northern District of Mississippi, which is the ultimate authority on improper removals to that court, has held repeatedly that this statute is not federally preempted.

¶42.    The dissent opines that the Fifth Circuit's decision in ***Arana v. Ochsner Health Plan***, 338 F.3d 433 (5th Cir. 2003), created ambiguity regarding whether Section 93-13-59 is preempted by ERISA. In support, the dissent relies on the Fifth Circuit's holding that a Louisiana statute was completely preempted by ERISA. But ***Arana*** does not create an

23

arguable basis that Mississippi chancery courts' approval of minor settlements is preempted. The statute at issue in *Arana* was a Louisiana enactment which sought to regulate directly the terms and enforceability of ERISA plans. *Id.* at 436. The statute under consideration in *Arana* provided that:

> Notwithstanding any other provisions in this title to the contrary, no group policy of accident, *health or hospitalization insurance*, or of any group combination of these coverages, shall be issued by any insurer doing business in this state *which by the terms of such policy group contract excludes or reduces the payment of benefits to or on behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance for the same claim determination period*. Any group policy provision in violation of this section shall be invalid.

*Id.* (quoting La. Rev. Stat. Ann. § 22:663 (West 1995 & Supp. 2003)) (emphasis added). In other words, *Arana* addressed an antisubrogation clause which expressly addressed ERISA plans. *Id.* It strains credulity that a Fifth Circuit holding regarding a Louisiana statute that explicitly controlled the terms of ERISA plans would call into question whether a Mississippi statute protecting the interests of minors is preempted. ERISA preemption of some statutes does not create an arguable issue about whether it preempts all statutes. Just because ERISA preemption is complex, it does not give lawyers *carte blanche* to remove cases to federal court.

¶43. It is clear that Section 93-13-59 does not directly address ERISA plans, that Section 91-13-59 is a domestic relations statute which presumptively is not preempted by federal law, and that all precedent which governs this case, both from the Northern District of Mississippi and from the Mississippi Supreme Court, holds that ERISA does not preempt the chancery court's duty to review minors' settlements. In the absence of valid contrary or intervening

24

authority, this area of the law was well settled when the plan undertook removal and had been for more than two decades. As such, the Pontotoc County Chancery Court did not abuse its discretion in determining that Ashley Healthcare Plan's removal to federal court was unsubstantiated and contrary to well-established precedent. The chancery court therefore did not abuse its discretion in awarding attorney's fees to the Dillards for Ashley Healthcare Plan's frivolous removal of this case to federal court.

## CONCLUSION

¶44. Although the Dillards could have filed a motion for attorney's fees under Rule 54 in federal court, they had the option of filing such a motion in state court under the Litigation Accountability Act for the plan's frivolous removal of the case to federal court. Moreover, because the plan pursued a remedy which was not cognizable under the ERISA civil enforcement statute and because there was clearly established precedent that ERISA did not preempt a chancery court's power to settle the claims of minors, we hold that the chancery court did not err by assessing attorney's fees against the plan, and we therefore affirm the judgment of the Pontotoc County Chancery Court.

¶45. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE AND COLEMAN, JJ.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶46. Today, a majority of this Court approves an $18,180 sanction against an attorney who did nothing more than advance a legal theory that clearly was not frivolous, and for which

25

there existed no court order preventing him from doing so. Because this remarkable precedent should be of grave concern to every practicing lawyer in Mississippi, I wish to record my strong dissent.

## BACKGROUND AND PROCEEDINGS

¶47. Ashley Furniture Industries, Inc. ("Ashley") is a Wisconsin corporation that has a manufacturing facility in Mississippi. For the benefit of its employees, it has a self-funded healthcare plan (the "Plan") that is administered by Ashley Healthcare Plan. The Plan clearly is covered by ERISA[6] and includes a contractual provision that states: "The Plan is subrogated to all rights of participants and beneficiaries, including guardians, for the recovery of expenses paid by the plan on their behalf." As a result of injuries sustained in an automobile accident, the Plan paid benefits on behalf of an Ashley employee's minor child, who asserted a claim against the tortfeasor who caused the injuries. The Plan asserted its subrogation lien against any recovery.

¶48. The child's parents, the Dillards, agreed to settle the claim with two insurance carriers, and filed a petition in the chancery court, seeking approval of the settlement and raising the issue of the Plan's right of reimbursement. The Plan read this to be an attempt to have the chancellor declare that state law prevented the Plan from recovering what ERISA allowed it to recover.

¶49. Within approximately thirty days of being served with the chancery petition, the Plan's lawyers, on behalf of their client—taking the position that ERISA preempts state law—filed

---

[6] Employment Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et seq.*

a Notice of Removal to federal court, and a notice of the removal with the Chancery Court of Pontotoc County. The Dillards responded by moving the federal court to remand the matter back to the chancery court, and requesting an award of attorney fees pursuant to 28 U.S.C. §1447, claiming the removal was filed for the "improper purpose of avoiding or delaying the finality of the administration of the minor's estate."[7] Two years later, the federal district court remanded the matter but failed to award any attorney fees, and the Dillards failed to pursue a post-judgment motion for attorney fees as required by Federal Rule of Civil Procedure 54(d)(2)(A).

¶50. On remand, the chancellor awarded attorney fees to the Dillards in the amount of $18,180. As for his reasons, the chancellor adopted in toto "those factors set forth in the [Dillard's motion for attorney fees] as the findings of fact by this Court." The chancellor stated that "by the exercise of due diligence, they should have ascertained what the law was as to minor settlements and the jurisdiction of the same in this state, and that's in the chancery court. They did not." He further stated:

> [t]he memorandum of authorities filed by Plaintiffs indisputably and succinctly demonstrated the futility of the argument espoused on behalf of Defendants that ERISA preempts a minor's settlement filed in Chancery Court such that Defendants should have immediately drafted an agreed order remanding this case to the Ponyotoc County Chancery Court.

¶51. He found that the Plan's position "directly contradicts prior established caselaw," and that "Plaintiffs were . . . provided numerous cases directly on point which irrefutably held

---

[7] This argument, itself, seems somewhat frivolous, since the Plan would have no conceivable reason to "delay" the judgment. Its purpose—which it freely admitted, and which was entirely proper—was to prevent the chancery court from deciding what it argued was a federal question that properly should be decided by a federal court.

27

their basis for removal to be invalid." The chancellor's conclusions—to the extent they suggested the existence of binding caselaw—were incorrect.

**Lawyers must zealously represent their clients.**

¶52. We admonish lawyers to zealously represent their clients, and we sanction them when they fail to follow the Mississippi Rules of Professional Conduct, one of which states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and in fact for doing so that is not frivolous, *which includes a good faith argument for an extension, modification or reversal of existing law*.[8]

The comment to Rule 3.1 states that lawyers have

> a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

**The plan's removal to federal court was not frivolous.**

¶53. Alleging that a lawyer's claim is frivolous is a serious, pejorative charge that should not lightly be made. We should encourage lawyers to challenge and test the limits of the law, so long as the claim is not patently absurd, that is to say, "so clearly untenable, or the insufficiency of which is so manifest upon a bare inspection of the pleadings, that the court or judge is able to determine its character without argument or research."[9]

---

[8] Miss. R. Prof'l Conduct 3.1 (emphasis added).

[9] ***Jordan v. McAdams***, 85 So. 3d 932, 935 (Miss. Ct. App. 2012) (citing ***Estate of Smith v. Smith***, 69 So. 3d 1, 6 (Miss. 2011)).

¶54. It certainly cannot credibly be argued that a claim is frivolous merely because it has no validity under established, binding precedent. Were that the case, we still would have segregated schools,[10] discriminatory jury selection,[11] and pro se indigent criminal defendants.[12]

**ERISA preemption under the circumstances of this case has not been decided.**

¶55. The chancellor's decision to award attorney fees rested on three decisions of the United States District Court for the Northern District of Mississippi,[13] and two decisions of this Court,[14] which hold that ERISA does not preempt Mississippi law governing minors' settlements, precluding removal to federal court. But contrary to the chancellor's finding, neither federal district court decisions nor decisions from this Court are binding precedent on federal questions. And there are no decisions on point from the Fifth Circuit or the United States Supreme Court. It is unacceptable to me for this Court to suggest that a lawyer should refrain from submitting an unsettled question of federal law to a federal court, simply because this Court or a federal district court previously has taken a position on the issue.

---

[10] *See **Brown v. Bd. of Educ. of Topeka, Shawnee Cnty., Kan.**,* 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954).

[11] *See **Batson v. Kentucky**,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[12] *See **Gideon v. Wainwright**,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[13] *See **Bauhaus USA, Inc. v. Copeland**,* 2001 WL 1524373 (N.D. Miss. Mar. 9, 2001), *affirmed,* 292 F.3d 439, 442 (5th Cir. 2002), *overruled by **ACS Recovery Servs., Inc. v. Griffin**,* 723 F.3d 518, 522-23 (5th Cir. 2013); **Estate of Ashmore v. Healthcare Recoveries, Inc.**, 1998 WL 211778 (N.D. Miss. Mar. 25, 1998); **Clardy v. ATS, Inc. Emp. Welfare Benefit Plan**, 921 F. Supp. 394 (N.D. Miss. Mar. 26, 1996).

[14] **In re Guardianship of Holmes**, 965 So. 2d 662, 664 (Miss. 2007); **Cooper Tire & Rubber Co. v. Striplin**, 652 So. 2d 1102, 1104 (Miss. 1995).

¶56. Further, the Plan argues that not even the Mississippi federal district courts have decided the precise question presented by the facts of this case because this case involved the factual question of whether the Dillards had asked the chancellor to declare that the Plan had no right to any proceeds of the settlement.[15] Moreover, at least one federal court of appeals and one federal district court have found complete ERISA preemption under similar circumstances.[16] So clearly, there is no established precedent on the preemption question. And even if there were, asserting a claim that is contrary to an established point of law is not *ipso facto* frivolous.

¶57. Stated another way, the fundamental flaw in both the chancellor's decision to award attorney fees, and the majority's decision to affirm, is that both view this case as if the Plan advanced an unreasonable argument in the face of settled law. The law is not settled. There is no established binding precedent on the preemption question. And even if there were, asserting a claim that is contrary to an established point of law is not *ipso facto* frivolous.

¶58. The majority suggests that a federal appellate court could never issue an opinion on the merits of this issue because federal law precludes any appeal of a district court's decision to remand a case back to state court. But the majority fails to consider that when a district court

---

[15] *See **Copeland***, 2001 WL 1524373; ***Estate of Ashmore***, 1998 WL 211778; ***Clardy***, 921 F. Supp. 394.

[16] *See **Arana v. Ochsner Health Plan***, 338 F.3d 433 (5th Cir. 2003); ***Reinhart Cos. Emp. Benefit Plan v. Vial***, 2011 WL 976505, *11 (W.D. Mich. Mar. 17, 2011).

exercises jurisdiction over a case, the jurisdictional question could be raised on appeal.[17] And until that happens, no binding precedent exists.

¶59. Further, the Plan's preemption argument is not patently unreasonable. In *Arana v. Oschner Health Plan*, the United States Court of Appeals for the Fifth Circuit held that ERISA preempted an action in "state court to obtain a declaration that he is entitled to retain tort settlement proceeds free of Ochsner Health Plan, Inc.'s claim for reimbursement of health care benefits previously paid for Arana's account . . . ."[18] The Plan cited this case to support removal, arguing that the Dillards' petition not only asked the chancellor to approve a $75,000 settlement, but also to declare that the Plan had no right to recover any portion of the settlement as reimbursement for medical expenses it had paid.

¶60. Ultimately, the district judge distinguished *Arana* in her memorandum opinion by finding that the Dillards' request in its pleading to prevent the Plan from recovering was not a request for a declaratory ruling on the Plan's right to recover a portion of the settlement, and that the Dillards had merely provided the chancellor notice that the Plan may have a claim against the settlement.

¶61. While the district judge's view of the meaning of the prayer for relief may or may not be correct, I must conclude that the Plan's attorneys were not unreasonable—and certainly not frivolous—in asserting that the Fifth Circuit's decision in *Arana*—which was handed down after the Northern District opinions on this issue—provided support for removal. Given the

---

[17] *See Arana*, 338 F.3d 433.

[18] *Id.* at 434.

lawyer's duty zealously to advance the interests of the client, I must disagree with the majority's view; I do not at all find unreasonable the Plan's argument that it was defending the action for a declaratory judgment that would have affected—and ultimately did affect—its right to recover, rather than "pursuing a remedy, and thus a cause of action, that was unavailable to it under federal law."

¶62. A careful distinction between cases and the debatable meaning of a prayer for relief in a pleading do not render the Plan's removal frivolous. We should not deter attorneys from advancing nonfrivolous legal arguments, however thin or doomed they may seem to some.

¶63. To the contrary, we should encourage lawyers to challenge the law to its very limits in zealously representing the interests of their clients.

### CONCLUSION

¶64. Today, the majority substantially lowers the threshold for a frivolous claim, and I believe that is not a good thing for the interests of clients or for the practice of law. I fear today's decision will serve to chill the spirit of trial lawyers whose duty to their clients often requires them zealously to advance aggressive and sometimes unpopular positions and arguments. Accordingly, and with the highest respect for the members of the majority, I dissent.

**PIERCE AND COLEMAN, JJ., JOIN THIS OPINION**.